[Crim. No. 3479.   Third Dist.   Oct. 1, 1963.]

THE PEOPLE, Plaintiff and Appellant, v. JUNE MENNIE BUESE, Defendant and Respondent.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edsel W. Haws, Deputy Attorney General, for Plaintiff and Appellant.

James E. Kleaver, Public Defender, for Defendant and Respondent.

PIERCE, P. J.— This is an appeal by the People pursuant to subdivision 1 of Penal Code section 1238 from an order dismissing the information charging defendant June Mennie Buese with bringing a drug into the Siskiyou County jail without having authority to do so by the rules of the jail (in violation of Pen. Code § 4573.5).

The trial court ordered the dismissal, holding that said code section violated due process; this because the word "drug" in the section without definition created an uncertainty intolerable in a criminal statute.

The "drugs" which defendant had brought into the jail were obedrin tablets containing, among other things, phenobarbital and methamphetamine. This drug is classified as a "hypnotic" and cannot be obtained without a prescription.

Defendant had brought in the pills concealed under her armpit, and they were discovered by the matron when defendant was changing into a prison gown. She confiscated them and turned them over to the sheriff.

The rule relied upon by the trial court is stated in *Lanzetta* v. *New Jersey,* 306 U.S. 451, at page 453 [50 S.Ct. 618, 83 L. Ed. 888 at p. 890], as follows:

" ... No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids. [Citations] The applicable rule is stated in *Connally* v. *General Constr. Co.,* 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322, 328] : 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' "

Exemplification of this rule in California is in cases such as *People* v. *McCaughan,* 49 Cal.2d 409 [317 P.2d 974], and *In re Newbern,* 53 Cal.2d 786 [3 Cal.Rptr. 364, 350 P.2d 116]. The latter case related the rule to a statute (former Pen. Code, § 647, subd. 11) listing a "common drunkard" as a vagrant. This phrase was said to have such a variety of differing definitions as to fall within the above-quoted rule of the *Lanzetta* case (which it also quoted).

The learned trial judge in the case at bench believed that the word "drug" as used undefined in the statute here involved was similarly uncertain. His research revealed more than a dozen cases, including within the classification of the word "drug," dyes, cream of tartar, dried lizards, sterilized bandages, mineral water, saltpetre, vitamins, crude petroleum, mentholated cigarettes and zinc oxide. The judge in his opinion worried lest "gouty old attorneys would have to park their colchicine on the jail steps" and said "I shudder to think what might happen to a trustee [*sic*] who for

instance is interested in taxidermy and who should be so unfortunate as to cure a lizard skin while incarcerated.''

This reaching far out for the illustrative *reductio ad absurdum*, however, brings into focus in this discussion another rule which is: ''that one will not be heard to attack a statute on grounds that are not shown to be applicable to himself and that a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations'' (*In re Cregler*, 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]), and the derivative rule, also expressed in *Cregler* (at p. 311), ''that all presumptions and intendments favor the validity of statutes; that mere doubt by the judicial branch of the government as to the validity of a statute will not afford a sufficient reason for a judicial declaration of its invalidity.''

*In re Cregler*, like *In re Newbern, supra*, involved a vagrancy statute. Petitioner was accused of being a known thief found ''loitering about'' a Greyhound bus station and thus a vagrant in violation of Penal Code section 647, subdivision 4 (before its 1961 repeal and reenactment). There the majority of the court held (on p. 312) that:

'' . . . As proscribed by the statute the word 'loiter' obviously connotes lingering in the designated places for the purpose of committing a crime as opportunity may be discovered. Section 4 of the Penal Code declares that the provisions of that code 'are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice.' . . . It is elementary that, if possible, statutes will be so construed as to avoid absurd applications and to uphold their validity. [Citation] A statute 'will not be given an interpretation in conflict with its clear purpose, and . . . *general words used therein will be given a restricted meaning when reason and justice require it, rather than a literal meaning which would lead to an unjust and absurd consequence.*' [Citations.]'' (Emphasis supplied.)

Our problem here is to determine whether the statute which we construe falls within the rule of *In re Newbern, supra*, or of *In re Cregler, supra*—both being recent holdings of our Supreme Court. In this task we are aided by the obiter of Justice Conley in *People* v. *Ortiz*, 200 Cal.App.2d 250 [19 Cal.Rptr. 211], which, although judgment of conviction was reversed on other grounds, asserts the constitutionality of Penal Code section 4573.6, companion to Penal Code section

4573.5 here involved. Section 4573.6 forbids the wilful *possession* of a drug in a jail without authorization. The drug there involved was Darvon compound and Achromycin V, a sedative and antibiotic respectively. The same argument was there made as that accepted by the trial judge here. It was answered by Justice Conley's opinion in the following language (p. 254):

'' . . . The difficulty with the argument is that it deals with hypothetical situations not present in the instant case. For under practically any definition of drug we would necessarily include the substances here in question. It is well established that an attack on constitutional grounds upon a statute must be limited to a consideration of the facts as presented by the specific case, and courts will not take into consideration purely hypothetical situations which might conceivably render the statute invalid under other circumstances.'' (Citing *In re Cregler, supra.*)

If this rule means that a statute can be at the same time valid and invalid depending upon *how* it is invoked, or against *whom* it is invoked, the paradox need not disturb us here. ▌ Clearly—as applied to the circumstances of the instant case—the import of the two rules (of *In re Newbern* and *In re Cregler*) in juxtaposition is that a law creating a crime will be declared obnoxious to due process if its language, sensibly interpreted, is so vague that persons sought to be charged receive no fair notice therefrom of what conduct on their part falls within its proscriptions; but courts will not give strained meanings to legislative language, torturing that which is clear (or can be made clear by common sense interpretation) into opacity through a process of imaginative hypothesizing. To do so would be to rule that all criminal statutes must be written by linquistic purists.

▌▌ Justice Conley, in *People* v. *Ortiz, supra,* did not find the word ''drugs'' so vague that the statute using it must be struck down. Neither do we. He stated the word ''drug'' should be interpreted in its usual, natural and ordinary sense and therefore accepted the definition in Webster's New International Dictionary of the English Language (3d ed. 1961): '' . . . a substance used as a medicine, or in making medicines for internal or external use.'' We do not herein assert that we would give the Legislature's intended meaning of ''drugs, other than narcotics'' that broad a scope. We do not need to. The dictionary definition certainly marks the outer limits of reasonability—and perhaps exceeds

it. We can fix a narrower range of meaning by another reasoning process.

Penal Code section 4573.5 is one of three statutes prohibiting the bringing of drugs or liquor into jails or possessing them within a jail. Section 4573 prohibits the bringing thereto of "any narcotic, the possession of which is prohibited by Division 10 of the Health and Safety Code, or any alcoholic beverage." Section 4573.5 with which we are directly concerned proscribes the bringing into jails of "drugs, other than narcotics." Section 4573.6 forbids the possession of "any narcotics, or drugs ... or alcoholic beverage." (All of these sections except the bringing in or keeping of these articles where permission has been obtained.) These sections are *in pari materia* and should be construed together. *McNeil v. Board of Retirement,* 51 Cal.2d 278 [332 P.2d 281]; *County of Placer* v. *Aetna Cas. etc. Co.,* 50 Cal.2d 182, 188-189 [323 P.2d 753]; *People* v. *Trieber,* 28 Cal.2d 657 [171 P.2d 1].) Also two intrinsic aids of construction, the doctrines of *ejusdem generis* (45 Cal.Jur.2d 651) and *noscitur a sociis* (45 Cal.Jur.2d 653) aid us to understand what the Legislature meant by use in section 4573.5 of the phrase "drugs, other than narcotics" when we consider the phrase in context. "Drugs" is the general word used in association with "narcotics" and "alcoholic beverages." These terms have a number of things in common, included among which is the fact that they are taken internally and when so taken they affect the brain, and particularly that function of the brain controlling judgment. By use of the word "drugs" it is reasonable to assume the Legislature intended to include those drugs having similar characteristics. So interpreted hypnotic drugs are clearly within a much larger group possessing such similarity. It is a hypnotic drug which is here involved.

We must also take into consideration the difficulty of specification which confronted the drafters of this legislation. This is illustrated by the throes suffered in specifying what "narcotics" are. In Health and Safety Code section 11001 they are not defined but are listed. In 1939, when the section was first enacted, nine items were included. (Stats. 1939, ch. 60, p. 755.) Year by year other drugs have been added. Now nearly a hundred drugs are included within the term "narcotics." (Stats. 1961, ch. 368, p. 1415.) No doubt this listing was undertaken due either to the difficulty or impossibility of

definition. If courts were to demand that the Legislature, to avoid unconstitutional uncertainty, must also specify all drugs not falling within the category of narcotics but similar thereto because of their judgment-affecting characteristics it is not inconceivable that a dictionary-sized statute would be required. We think it would be unreasonable to insist upon such exactitude and that the prohibition against narcotics, alcoholic beverages and drugs other than narcotics sufficiently apprises a person that, in bringing a hypnotic drug into a jail without authorization, he or she is violating the section.

We hold, therefore, that Penal Code section 4573.5 satisfies the rule requiring certainty in criminal statutes and that the trial judge erred in holding it unconstitutional.

Respondent's motion to set aside the information under section 995 of the Penal Code was also based upon the ground that there was no evidence that the drug was brought into the jail without authority. (The court's memorandum indicates this was not the ground upon which the charge against defendant was dismissed.)

Since to cast upon the prosecution the burden of proving lack of authorization requires proof of a negative—always difficult (see *Campbell* v. *Allstate Ins. Co.*, 60 Cal.2d 303 [32 Cal.Rptr. 827, 384 P.2d 155])—it may be a reasonably close question whether that was the intent of the law. (See, e.g., Code Civ. Proc., § 1869.) We do not find it necessary to answer that question. If we assume the prosecution was obligated to prove the negative, then slight proof satisfied the requirement. (*Russell* v. *McDowell*, 83 Cal. 70, 81 [23 P. 183].) Here there was evidence of surreptitious behavior on the part of the defendant to hide the drug and this, coupled with the activities of the matron in calling the jailer who confiscated the pills and turned them over to the sheriff, was sufficient to establish reasonable and probable cause that the drug had been brought into the jail without authority. The evidence need not be such as would require a conviction. (*People* v. *Nagle*, 25 Cal.2d 216, 222 [153 P.2d 344]; *Lorenson* v. *Superior Court*, 35 Cal.2d 49 [216 P.2d 859]; *Weber* v. *Superior Court*, 35 Cal.2d 68 [216 P.2d 871].)

" ... [T]he 'court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated.'" (*People* v. *Reed*, 190 Cal.App.2d 344, 353 [11

Cal.Rptr. 780] ; *People* v. *Jablon*, 153 Cal.App.2d 456 [314 P.2d 825].)

The order dismissing the information is reversed.

Schottky, J., and Friedman, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 27, 1963.