[Crim. No. 27157. Second Dist., Div. Two. Mar. 17, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
FRED FIXLER et al., Defendants and Appellants.

**COUNSEL**

Fleishman, McDaniel, Brown & Weston, Fleishman, Brown, Weston & Rohde and David M. Brown for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Jack T. Kerry, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**COMPTON, J.**—In a nonjury trial defendants Fixler and Utterback were convicted of conspiring to violate Penal Code section 266i (pandering). In addition, Fixler was convicted of two substantive counts of pandering and Utterback was convicted of one substantive count of pandering. They appeal from the judgment of conviction.

There is little dispute as to the facts underlying the judgment. Utterback was one of several photographers employed by American Art Enterprises, a concern that publishes various magazines devoted to the depiction of sexual activity. Fixler was a "photo editor" for American Art Enterprises. In that capacity he directed the work of the photographers and from time to time held meetings at which the quality and content of the pictures was discussed. At one meeting Fixler gave instructions to the photographers as to what they should do in the case of arrest.

The photographers obtained the services of their subjects from independent modeling agencies and paid various fees to these "models" for engaging in several types of sexual activity while being photographed. This activity ran the gamut from masturbation through homosexual oral copulation to heterosexual oral copulation and sexual intercourse.

The instant prosecution was based essentially on the use of one Patricia, a 14-year-old girl who was hired on some 8 to 15 occasions to perform for Utterback and one Robert Kanters,[1] in return for money which was provided by American Art Enterprises.

Penal Code section 266i condemns among other things the procuring of another person for the purpose of prostitution or the causing, inducing, persuading or encouraging another to become a prostitute.

---

[1]Charges originally lodged against Robert Kanters were dismissed and he testified for the prosecution.

Prostitution is defined as "Common lewdness of a woman for gain" (Black's Law Dict. (4th ed.)) "act or practice of engaging in sexual intercourse for money." (Random House Dict. of the English Language (Unabridged ed.)) or ". . . any lewd act between persons for money or other consideration." (Pen. Code, § 647, subd. (b).)

■    There can be no question but that Patricia engaged in lewd acts and sexual intercourse for money and that defendants, by providing the money and directing her performances, procured, caused and induced her to do so. (See *People* v. *Bradshaw*, 31 Cal.App.3d 421 [107 Cal.Rptr. 256]; *People* v. *Montgomery*, 47 Cal.App.2d 1 [117 P.2d 437]; *People* v. *Courtney*, 176 Cal.App.2d 731 [1 Cal.Rptr. 789].) There is nothing in statute or case law which would remove this conduct from the ambit of the statute (Pen. Code, § 266i) simply because the money was provided by nonparticipants in the sexual activity or because the defendants' primary motivation was to photograph the activity.

■    It seems self-evident that if A pays B to engage in sexual intercourse with C, then B is engaging in prostitution and that situation is not changed by the fact that A may stand by to observe the act or photograph it. A criminal act is not made any the less criminal by pictorial recordation of the act. (See *People* v. *Zeihm*, 40 Cal.App.3d 1085 [115 Cal.Rptr. 528].)

■    Although defendants couch their claims of error in a number of differently phrased arguments, their basic contention is the ingenuous but fallacious one that because their intent was to publish some of the photographs in a magazine their conduct in procuring Patricia to engage in lewd conduct for money is somehow clothed with First Amendment protection and that they cannot be convicted of pandering without proof that use of the photographs in the magazine would violate the obscenity statutes. To buttress this position defendants made an offer in the trial court to produce an "expert" witness to testify that these pictures of Patricia that found their way into the magazines had important social value. That offer was properly rejected as irrelevant.

The prosecution here was based on conduct and was not aimed at prohibiting any communication of ideas. The manner of obtaining the photographs and the ultimate use to which those photographs might be put are separate and unrelated issues. ■    While First Amendment considerations may protect the dissemination of printed or photographic material regardless of the manner in which the material was originally

obtained, where a crime is committed in obtaining the material, the protection afforded its dissemination would not be a shield against prosecution for the crime committed in obtaining it.

The fact that a motion picture of an actual murder, rape or robbery in progress may be exhibited as a news film or a full length movie without violating the law does not mean that one could with impunity hire another to commit such a crime simply because the primary motivation was to capture the crime on film.

As the United States Supreme Court stated in *United States* v. *O'Brien,* 391 U.S. 367, at page 376 [20 L.Ed.2d 672, at page 679, 88 S.Ct. 1673]: "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." (Also see *Silva* v. *Municipal Court,* 40 Cal.App.3d 733 [115 Cal.Rptr. 479].)

No creative communication is involved in the hiring of a 14-year-old girl to engage in depraved and perverted sex acts. The character of that activity is not altered by the pretense of photographing it. (Compare *State* v. *Ray,* 292 Minn. 104 [193 N.W.2d 315, 48 A.L.R.3d 1306].)

Giving the defendants the benefit of all doubt and accepting their claim that they intended to use the photographs in a nonobscene publication, the fact remains that in order to obtain these photographs they become, by definition, common panderers and were not immune from prosecution for their crimes.

The California Supreme Court held in *Barrows* v. *Municipal Court,* 1 Cal.3d 821 [83 Cal.Rptr. 819, 464 P.2d 483], that acts which are independently prohibited by law cannot be consummated without sanction merely because they occur in a theatrical setting and we conclude they cannot be consummated without sanction because they occur in the course of preparing material which may ultimately be exhibited in a manner protected by the Constitution. (See *People* v. *Drolet,* 30 Cal.App.3d 207 [105 Cal.Rptr. 824]; *People* ex rel. *Hicks* v. *Sarong Gals,* 27 Cal.App.3d 46 [103 Cal.Rptr. 414].)

The evidence strongly supports the conclusion that defendants were well aware of the law prohibiting pandering and prostitution, that they were aware of the illegality of their conduct and knowingly

conspired to violate those laws. Their association with American Art Enterprises gave them no special status or immunity.

■   The purpose of the anti-pandering statute (Pen. Code, § 266i) is to ". . . cover all the various ramifications of the social evil of pandering and include them all in the definition of the crime, with a view of effectively combating the evil sought to be condemned." (*People* v. *Montgomery, supra,* 47 Cal.App.2d 1, at p. 24.) That purpose is well served by the conviction of these defendants.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

A petition for a rehearing was denied April 14, 1976, and appellants' petition for a hearing by the Supreme Court was denied May 14, 1976.