[Crim. No. 7839. Fourth Dist., Div. Two. Oct, 1, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES A. PATTON, Defendant and Appellant.

**COUNSEL**

James M. Hollabaugh, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Rudolf Corona, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**THE COURT.**—Defendant was convicted by jury verdict of pandering (Pen. Code, § 266i), and sentenced to state prison. He appeals from the judgment.

At the age of 16, Gail ran away from home and came to San Bernardino. By lying about her age, she obtained a job as a waitress in a Sambo's restaurant working the night shift from about 9 p.m. to about 6 a.m. Defendant was a regular customer at the Sambo's where Gail worked. He told her his name was Brown Sugar, flirted with her, and offered to help her if she needed money. When Gail lost her job she went to defendant's motel room to borrow $10. Defendant said he did not have the money then, but he told Gail she could earn money working for him as a prostitute. Gail did not respond to this offer and testified at trial that it stunned her.

A few days later Gail was arrested when she admitted being a runaway. When asked by the police whether she had been working as a prostitute, Gail said she had not but she related defendant's offer. Gail then agreed to phone defendant and discuss his proposition.

From the police station Gail phoned defendant's motel. A clerk answered and summoned defendant to the phone. Defendant identified himself to Gail as Brown Sugar. When Gail asked for more details about the terms of the offer, defendant asked her to call him at a nearby pay phone where he would not be overheard. When Gail did so, defendant again urged her to work for him as a prostitute. He said a woman had been working for him in that capacity for a year and a half, but she was in custody and he was running out of money. He said he would find an apartment for Gail, would arrange bail if she was arrested, and would take care of her needs. While this conversation was in progress defendant was arrested in the phone booth.

The phone conversation was recorded on tape but the recording mechanism malfunctioned during the first two minutes of the conversation. This portion included only the answer by the motel clerk, the interval while defendant was summoned, his identification as Brown Sugar, and Gail's first question. The balance of the conversation, approximately 15 minutes in length, was properly recorded. The recording officer testified that the occasional pauses on the tape after the

initial malfunction were lapses in the conversation rather than recording malfunctions. He based this opinion on the presence of background noises during the pauses. Gail testified that except for the gap at the beginning, the recording was complete.

At the trial the judge ruled that the tape could be admitted into evidence and played for the jury only if it qualified as past recollection recorded, an exception to the hearsay rule. The tape was eventually admitted on this basis over defendant's objection.

Defendant's contentions are: (1) the trial judge erred in ruling that evidence that Gail had engaged in prostitution was irrelevant; and (2) the trial judge erred in admitting the tape into evidence.

The charging allegations of the information filed against defendant are: ". . . between October 5, and October 20, 1975, [defendant] did by promises, encourage another person, to wit, Gail . . . , to become a prostitute." This language is taken from subdivision (b) of Penal Code section 266i, which provides that pandering is committed by a person who "by promises, threats, violence, or by any device or scheme, causes, induces, persuades or encourages another person to become a prostitute."[1]

Defendant's first contention is that a woman cannot become a prostitute if she already is one and therefore it is a complete defense to a charge under subdivision (b) that the woman had previously engaged in prostitution. Defendant argues that error was committed by the trial judge (1) in ruling inadmissible evidence tending to show that Gail had

[1]Penal Code section 266i provides, in full: "Any person who : (a) procures another person for the purpose of prostitution; or (b) by promises, threats, violence, or by any device or scheme, causes, induces, persuades or encourages another person to become a prostitute; or (c) procures for another person a place as inmate in a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state; or (d) by promises, threats, violence or by any device or scheme, causes, induces, persuades or encourages an inmate of a house· of prostitution, or any other place in which prostitution is encouraged or allowed, .to remain therein as an inmate; or (e) by fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, procures another person for the purpose of prostitution, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution; or (f) receives or gives, or agrees to receive or give, any money or thing of value for procuring, or attempting to procure, another person for the purpose of prostitution, or to come into this state or leave this state for the purpose of prostitution, is guilty of pandering, a felony, and is punishable by imprisonment in the state prison for not less than one year nor more than 10 years."

engaged in prostitution, and (2) in instructing the jury that "it is immaterial to the charge of pandering whether the person encouraged to become a prostitute is an innocent person or a hardened prostitute of long experience."

The question of the proper interpretation of the phrase "encourage to become a prostitute" was still in doubt as recently as 1973. In that year the issue was decided, adversely to defendant's contention, by *People* v. *Bradshaw,* 31 Cal.App.3d 421 [107 Cal.Rptr. 256]. In *Bradshaw* a policewoman posing as an experienced prostitute received an offer from the defendant to enter a house of prostitution under the defendant's supervision. On appeal the court rejected the defendant's contention that his belief that the woman was already a prostitute constituted a defense to the charge of pandering.

After noting that this issue had never been decided, the court stated: "However, *People* v. *Frey* [228 Cal.App.2d 33 (39 Cal.Rptr. 49)] gives us a clue. In that case, one count as to which defendant's conviction was sustained involved (as here) an undercover policewoman. She had gone to considerable trouble to set up (with the aid of the other undercover officers) the appearance of being an independent prostitute who 'picked up' customers in a hotel bar, and she told Frey that she was so engaged. The opinion makes no reference to the contention now urged, but its result is, clearly, in opposition to that contention. We feel impelled, lacking any more express authority, to follow the *Frey* result.

"Clearly, the conduct described in subdivisions (a), (c), (d) and (e) covers conduct with either experienced or innocent women. Subdivisions (a) and (c) appear to require success; subdivision (d) seems to be directed at the coercion of a prostitute who wants to quit. Against this background, subdivision (b) serves a legitimate purpose if construed as defendant contends, namely to inhibit efforts to recruit innocent women into the field of prostitution. But, as applied in *Frey,* it covers also cases where a defendant has solicited one whom he believes to be a former prostitute to re-enter the profession and a defendant who solicits one whom he believes presently to be a prostitute to change her business relations." (*People* v. *Bradshaw, supra,* 31 Cal.App.3d 421, 426.)

*Bradshaw* was followed by *People* v. *Hashimoto,* 54 Cal.App.3d 862 [126 Cal.Rptr. 848], which again involved a policewoman posing as a prostitute. The defendant, a travel agent, offered to refer foreign tourists

to her on a regular basis. In response to a contention that the evidence was insufficient the court stated: "The defendant offered to provide a ready-made clientele with fixed prices and a reasonable assurance of a continuous volume of business should Officer Moriarty agree to the plan. This constituted active encouragement within the purview of section 266i of the Penal Code, and neither success nor consummation of the proposal was a necessary element of a violation of the pandering statute. (*People* v. *Bradshaw,* 31 Cal.App.3d 421 [107 Cal.Rptr. 256].)

"It was held in *Bradshaw,* at page 426, that Penal Code section 266i covers cases ' . . . where a defendant has solicited one whom *he believes to be a former prostitute* to re-enter the profession and a defendant who solicits one whom he *believes presently to be a prostitute to change her business relations.*' (Italics added.)

"Defendant, with his proposal, was inducing or encouraging a female that he believed to be a prostitute to continue in the profession and to change her business relations by reducing her price in exchange for volume. Defendant's plan contemplated that the prostitute would use her own place of abode to handle customers that he, as her agent, would provide.

"In this latter regard defendant was not unlike the defendant in *Aguilera* v. *Superior Court,* 273 Cal.App.2d 848 [78 Cal.Rptr. 736], where a maitre d' at an expensive restaurant who referred customers to a prostitute that operated in her own apartment was found to have violated Penal Code section 266i.

"The pandering statute and Penal Code section 266h (pimping) are both designed to discourage prostitution by discouraging persons other than the prostitute from augmenting and expanding a prostitute's operation, or increasing the supply of available prostitutes. (*People* v. *Courtney,* 176 Cal.App.2d 731 [1 Cal.Rptr. 789]; *People* v. *Montgomery,* 47 Cal.App.2d 1 [117 P.2d 437].)" (*People* v. *Hashimoto, supra,* 54 Cal.App.3d 862, 866-867.)

Defendant concedes that recent California authority is against him. In support of his position, he cites cases from other jurisdictions, the most recent having been decided in 1926, and he argues that his position is also supported by sound considerations of public policy. He maintains that the social harm committed by solicitation of a virtuous woman is an evil worthy of criminal sanction because the woman would find this conduct offensive, in the manner of an obscene phone call, whereas the

actual social harm committed by unsuccessfully urging an established prostitute to change her business relations is de minimis, because the sensitivity of the woman will generally have been coarsened by previous acts of prostitution.

The fallacy involved in this reasoning is the assumption that the Legislature was concerned only with actual, rather than potential, harm.. ■. It appears to us that subdivision (b) of Penal Code section 266i proscribes conduct in the nature of an attempt. Thus the relevant social policy question is the potential for harm which defendant's conduct reveals. A substantial potential for social harm is revealed even by the act of encouraging an established prostitute to alter her business relations. Such conduct indicates a present willingness to actively promote the social evil of prostitution. "The purpose of the anti-pandering statute (Pen. Code, § 266i) is to '. . . cover all the various ramifications of the social evil of pandering and include them all in the definition of the crime, with a view of effectively combating the evil sought to be condemned.' (*People* v. *Montgomery, supra,* 47 Cal.App.2d 1, at p. 24.)" (*People* v. *Fixler,* 56 Cal.App.3d 321, 327 [128 Cal.Rptr. 363].)

On the authority of *Bradshaw* and *Hashimoto,* with which we agree fully, we conclude that defendant's first contention is without merit.

Defendant's remaining contention is that the court erred in allowing the tape of his conversation with Gail to be played to the jury. He maintains (1) that there was no adequate showing that Gail was unable to recall the conversation fully and accurately, and (2) that the tape was not properly authenticated.

As previously mentioned, the trial court ruled that the tape recording could be admitted into evidence and played for the jury only if all the requirements of Evidence Code section 1237[2] were met. Evidence Code

---

[2]Evidence Code section 1237 provides: '(a) Evidence of a statement previously made by a witness is not made inadmissible by the hearsay rule if the statement would have been admissible if made by him while testifying, the statement concerns a matter as to which the witness has insufficient present recollection to enable him to testify fully and accurately, and the statement is contained in a writing which:

"(1) Was made at a time when the fact recorded in the writing actually occurred or was fresh in the witness' memory;

"(2) Was made (i) by the witness himself or under his direction or (ii) by some other person for the purpose of recording the witness' statement at the time it was made;

"(3) Is offered after the witness testifies that the statement he made was a true statement of such fact; and

section 1237 codifies the past recollection recorded exception to the hearsay rule. One of the requirements of Evidence Code section 1237 is that the proffered evidence "concerns a matter as to which the witness has insufficient present recollection to enable him to testify fully and accurately." Defendant contends that Gail had sufficient recollection at trial to testify fully and accurately, although not verbatim, to the contents of the telephone conversation.

It is unnecessary to reply directly to this contention, for we are of the opinion that the trial judge erred in ruling that the recording could be admitted only if it qualified under Evidence Code section 1237. The error did not prejudice defendant, however; its only effect was to raise unnecessary barriers to admission of the People's evidence. The trial court's use of an unsound course of reasoning is immaterial if the action ultimately taken, admission of the tape, was proper. (See 6 Witkin, Cal. Procedure (2d ed.) Appeal, § 226.) We have concluded that the court's action in admitting the evidence was proper.

The tape was not a recording of recollection. If, after the conversation with defendant, Gail had immediately recited what had occurred, and this statement had been recorded, the resulting tape would have been a recorded recollection. The tape at issue here, however, does not involve a memory of an event or a description of an event; rather, the tape is a mechanical rendering of the event itself.[3]

The tape of the conversation was no more suceptible to an objection on the grounds of hearsay than was Gail's trial testimony regarding the same conversation. Each was direct evidence of the contents of the conversation. The conversation itself was not hearsay because it was not offered for the truth of the matters asserted. Defendant's statements to Gail constituted the substantive offense with which he was charged, and therefore were "operative facts." (See *People v. Warner,* 270 Cal.App.2d 900, 907 [76 Cal.Rptr. 160]; *People v. Kohn,* 258 Cal.App.2d 368, 376 [65 Cal.Rptr. 867]; *People v. McShann,* 177

"(4) Is offered after the writing is authenticated as an accurate record of the statement.
"(b) The writing may be read into evidence, but the writing itself may not be received in evidence unless offered by an adverse party."

[3]The difference may be illustrated by comparing a radio broadcast of a baseball game with a television broadcast of the same game. In the former situation the information received by the listener, except for occasional sounds from the playing field, has all been filtered through the mind of the announcer and is therefore hearsay. In the latter case, the visual information has been processed by mechanical means and therefore is not hearsay.

Cal.App.2d 195, 199 [2 Cal.Rptr. 71]; Witkin, Cal. Evidence (2d ed.) § 463.)

On appeal, both parties make reference to the best evidence rule. ■ It is well settled that where both a tape recording of a conversation and a witness to the conversation are available at trial, the testimony of the witness is not barred by the best evidence rule. (*People v. Sweeney,* 55 Cal.2d 27, 38 [9 Cal.Rptr. 793, 357 P.2d 1049]; *People* v. *Johnson,* 39 Cal.App.3d 749, 763 [114 Cal.Rptr. 545].) We are persuaded that the converse is equally true: the tape recording is not barred by the best evidence rule merely because a witness to the conversation is available. (See Feld, Admissibility in Evidence of Sound Recording as Affected by Hearsay and Best Evidence Rules, 58 A.L.R.3d 598, 625.) In conclusion it may be said that the best evidence rule is inapplicable in this contest.[4]

Under the Evidence Code a recording is a writing. (Evid. Code, § 250.) Recordings are therefore subject to the authentication requirements of Evidence Code section 1400 et seq.

■ In the case at bench, the tape recording was amply authenticated. After listening to the tape out of the jury's presence, Gail testified that it was accurate and complete, except for the initial gap. This alone was sufficient authentication. (Evid. Code, § 1413; *People* v. *Ketchel,* 59 Cal.2d 503, 518 [30 Cal.Rptr. 538, 381 P.2d 394], disapproved on other grounds in *People* v. *Morse,* 60 Cal.2d 631, 648-649 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810].) In addition, the officer who operated the recording machine identified the tape, testifying that it had been continuously in his custody. That the voice on the tape was defendant's was also established by the testimony of the officer who arrested defendant in the phone booth while the conversation was in progress. After the arrest the officer spoke into the phone and his voice is also heard on the tape.

Judgment affirmed.

A petition for a rehearing was denied October 28, 1976, and appellant's petition for a hearing by the Supreme Court was denied December 2, 1976.

---

[4]Application of the best evidence rule to rerecordings and transcripts of recordings are separate questions not now before us.