[Crim. No. 32161. Second Dist., Div. Four. Feb. 2, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN GEORGE WHITE, Defendant and Appellant.

**COUNSEL**

Raymond C. Youngquist for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and Owen Lee Kwong, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.**—Defendant appeals from a judgment of conviction of violating Penal Code section 266i. The information charged that defendant committed the offense between June 1975 and October 1975, by procuring Jeanine, a female, a place as an inmate of a house of prostitution. Defendant waived trial by jury and was convicted in a court trial. Defendant was sentenced to state prison for the term prescribed by law.

The sentence was suspended and defendant was placed on probation for a period of five years subject to certain specified conditions, including spending one year in the county jail.[1]

---

[1]Richard Earl Forrester and Carol Ann White were charged and tried jointly with defendant. Forrester was acquitted but Carol Ann White, defendant's wife, was also convicted. Carol has not appealed from her judgment of conviction.

## I

### *The Factual Background*

Jeanine, a 16-year-old female, sought employment at the Cover Girl Studio at 360 East Holt in the City of Pomona. Jeanine represented herself to be an adult and used her sister's birth certificate. She was advised that the female employees posed in the nude for customers who could take photographs of them in the nude.

At the time of her initial contacts with the Cover Girl Studio, Jeanine was living with Gerald Fransen whom she later married. Forrester, with whom she talked about a job at Cover Girl Studio, came to the residence of Jeanine and Gerald and gave them the name and telephone number of Sherry (Carol) and defendant, who would arrange for Jeanine's employment at Cover Girl Studio. Jeanine and Gerald called Sherry and made an appointment to visit the latter's home in West Covina. Defendant told Jeanine and Gerald that he, with Forrester, was the owner of the Cover Girl Studio in Pomona and of one in Whittier. Defendant and his wife Carol advised Jeanine of the various prices to the customers for the nude posing. Defendant also advised Jeanine that she would be engaging in various sexual acts with the customers, and advised Jeanine of the separate charges she was to make for different sexual acts such as one amount for straight intercourse and a higher sum for oral copulation.

In addition, defendant and Carol advised Jeanine of how she should handle a male solicitation for sexual acts if there were indications the customer was a police officer. Gerald was present and heard the entire conversation at the home of defendant.

The next day, Jeanine went to the Cover Girl Studio in Whittier for orientation and began work the next day. Jeanine worked at both the Pomona Studio and the Whittier Studio. The studios had a card index system with different colors of ink to be used to indicate the type of sexual act involved and the charge to the customer. The females who worked at the studios received a commission on the amount charged by the studio for the nude modeling sessions, depending on the length of the session and whether a customer used his own camera or the studio's camera. The Cover Girl Studios were arranged physically with a reception room in front and separate rooms in the back for the nude modeling and prostitution activities.

Jeanine testified that she saw defendant at the studios about once a week. Between June 1975 and October 1975, Jeanine said she performed approximately 1,000 sexual acts for money and earned about $7,000. The customers paid her directly for sexual acts. She did not pay any of the money she earned for sexual acts to defendant.

In August 1975, defendant opened a new nude-girl studio in Anaheim and Jeanine worked at this studio and performed sexual acts there also.

Jeanine admitted signing, along with other females employed at the studios, a document reciting that if any employee, during the course of her employment, committed any sexual acts with a customer, she would be fired. Jeanine stated that she continued to engage in sexual activity with customers after she signed the document.

## II

### *Defendant's Contentions*

Defendant advances the following contentions on this appeal: (1) The evidence is insufficient to sustain defendant's conviction because Penal Code section 266i does not cover sexual acts of oral copulation. (2) The prosecution's evidence did not constitute substantial evidence to sustain a conviction. (3) It was due process error for the trial court not to require the prosecution to rely upon some specific acts of prostitution on the part of the victim.

## III

### *The Meaning of a "House of Prostitution" Under Penal Code Section 266i*

Penal Code section 266i defines the felony offense of pandering. In pertinent part, section 266i, subdivision (c), sets forth the offense for any person who "procures for another person a place as inmate in a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state."

■ It is defendant's contention that the prosecution's evidence establishes only that Jeanine on one occasion said that she had performed an act of oral copulation with a customer of the Cover Girl Studio for money and that her testimony that she performed numerous "sexual acts"

for money at the Cover Girl Studios does not establish that sexual intercourse for money was being performed at defendant's Cover Girl Studios. Defendant argues that a "house of prostitution," as that term is used in Penal Code section 266i, is limited to a place where sexual intercourse is practiced for money, and does not cover other sexual acts such as oral copulation or sodomy.

We need not decide whether a "house of prostitution," as that term is used in Penal Code section 266i, is limited to a place where regular sexual intercourse is practiced for money and does not cover a place where other sexual acts are performed such as oral copulation or sodomy.[2] We do not

---

[2]In *People* v. *Schultz* (1965) 238 Cal.App.2d 804 [48 Cal.Rptr. 328], the court stated with respect to the offense described in Penal Code section 266i: "A 'house of prostitution' is a house in which a prostitute plies her trade [citations]; a 'prostitute' is a woman who offers herself indiscriminately for *sexual intercourse* for hire [citations]; an 'inmate' is a female who is induced or encouraged to occupy, live or abide in a house of prostitution [citations]; and the term 'procure' means assisting, inducing, persuading or encouraging a female person to become an inmate of a house of prostitution [citation]." (*Id.,* at p. 812.) (Italics added; fn. omitted.) But in *People* v. *Fixler* (1976) 56 Cal.App.3d 321, 325 [128 Cal.Rptr. 363], the court interpreted the term "prostitution" as used in Penal Code section 266i to cover " '[c]ommon lewdness of a woman for gain' " as well as the " 'act or practice of engaging in sexual intercourse for money.' " In holding that the term "prostitution" covered sexual acts such as masturbation and oral copulation, the *Fixler* court relied in part on the provisions of Penal Code section 647, subdivision (b), which defines the misdemeanor offense of "disorderly conduct" to include a person "[w]ho solicits or who engages in any act of prostitution. As used in this subdivision, 'prostitution' includes any lewd act between persons for money or other consideration." In *People* v. *Grow* (1978) 84 Cal.App.3d 310 [148 Cal.Rptr. 648], the court followed *Fixler* in drawing its definition of "prostitution," as used in Penal Code section 266i, from Penal Code section 647, subdivision (b).

But the reliance upon Penal Code section 647, subdivision (b), made by *Fixler* and *Grow* is not altogether persuasive. In 1961, section 647, subdivision (b), was added to the Penal Code to make it an offense of "disorderly conduct" for a person "[w]ho solicits or who engages in any act of prostitution." (Stats. 1961, ch. 560, § 2, p. 1672.) Subdivision (b) was amended in 1965, by adding the sentence—"As used in this subdivision, 'prostitution' includes any lewd act between persons of the same sex for money or other consideration." (Stats. 1965, ch. 1959, § 1, p. 4487.) In 1969, subdivision (b) was again amended to delete the words of the second sentence—"of the same sex." (Stats. 1969, ch. 1319, §§ 1, 2, p. 2657.)

It would appear, therefore, that, before the amendment, the term "prostitution," as used in Penal Code section 647, subdivision (b), was intended to refer to that term as generally accepted: a prostitute—being a woman who engages in sexual intercourse for hire and a house of prostitution being a place in which a prostitute plies her trade. (See *Schultz, supra,* 238 Cal.App.2d 804.) It is a generally accepted tenet of statutory construction that the same words used in different statutes that are *in pari materia* are to be given the same meaning. (*People* v. *Buese* (1963) 220 Cal.App.2d 802 [34 Cal.Rptr. 102]; *People* v. *Courtney* (1959) 176 Cal.App.2d 731 [1 Cal.Rptr. 789].) It is reasonably arguable, therefore, that the term "prostitution," used in Penal Code section 266i, was intended by the Legislature to have the same meaning as the same term was intended to have in Penal Code section 647, subdivision (b). The failure of the Legislature to amend Penal Code section 266i while amending Penal Code section 647, subdivision (b), could

agree with defendant's contention that the prosecution's evidence was limited to proof that Jeanine engaged in only acts of oral copulation while employed at defendant's Cover Girl Studios. Jeanine testified that at the initial conversation she and Gerald had at defendant's home, defendant and Carol set forth minimum prices Jeanine was to charge for various types of sexual acts with the customers, with a different charge for oral copulation, as contrasted with regular sexual intercourse. In light of this initial conversation, Jeanine's testimony that she had engaged in numerous sexual acts for money while working at the defendant's Cover Girl Studios is subject to the reasonable interpretation that these sexual acts included sexual intercourse. The fact that her sexual acts also included oral copulation and other forms of sexual activity would not change the fact that, when having regular sexual intercourse with customers, she was engaging in prostitution at defendant's Cover Girl Studios.

## IV

*Sufficiency of the Evidence to Sustain*
*Defendant's Conviction Under the*
*Substantial Evidence and Solid Value Rule*

Defendant argues that the evidence in the instant case is insufficient to sustain his conviction. We start with the principle of appellate review that, "in reviewing a criminal conviction on appeal to determine whether the record contains any substantial evidence tending to support the finding of the trier of fact, and in considering this question we [the appellate court] must view this evidence in the light most favorable to the finding. [Citation.] The test is not whether guilt is established beyond a reasonable doubt. [Citations.]" (*In re Roderick P.* (1972) 7 Cal.3d 801, 808 [103 Cal.Rptr. 425, 500 P.2d 1].) On the contrary, we must make a determination of whether a reasonable trier of fact could have found that the prosecution had established the defendant's guilt beyond a reasonable doubt.

 Defendant argues, however, that the record does not satisfy the requirement that the evidence was such that a reasonable trier of fact could have found defendant guilty. Defendant relies upon the principle that " ' "in determining whether the record is sufficient in this respect the

indicate that the Legislature did not intend to change the meaning of "prostitution" as used in Penal Code section 266i, to produce the expanded meaning given the term by the amendment to Penal Code section 647, subdivision (b), in the 1965 and 1969 amendments.

appellate court can give credit only to 'substantial' evidence, i.e., evidence that reasonably inspires confidence and is 'of solid value.' " ' " (*In re Roderick P., supra,* 7 Cal.3d 801, 809.)

Defendant points out that there was no evidence that any of the other female employees of defendant's Cover Girl Studios engaged in prostitution. Jeanine testified that she had never seen or heard indications that any of the other female employees were so engaged.

Jeanine also testified that, in August 1975, she was arrested in Orange County for soliciting a customer who turned out to be a police officer. In the Fullerton Municipal Court she testified that she had never solicited a male for sexual intercourse; but she was found guilty in that court, fined and put on probation. In her testimony in the case at bench she stated that she had committed perjury in the Fullerton trial.

Evidence from an admitted perjurer is certainly not of the most trustworthy character. The credibility of Jeanine as a witness leaves much to be desired. But under the accepted standard of appellate review, we cannot substitute our judgment of the weight of the evidence for that of the trial judge. Although the prosecution's case against defendant was not particularly strong, we are unable to conclude that a reasonable trier of fact could not have believed Jeanine's testimony and found defendant guilty beyond a reasonable doubt. We are required to conclude, therefore, that the prosecution's evidence amounts to "substantial" evidence within the meaning of the decisional law—evidence that is of solid value and that reasonably inspires confidence.

V

*Was the Prosecution Required to Elect*
*and Stand Upon Some Specific Acts*
*Occurring Between June 1975 and*
*October 1975?*

■ Defendant asserts that he was deprived of due process of law because of the trial court's ruling that the prosecution was not required to elect, between June 1975 and October 1975, a particular act which constituted defendant's violation of Penal Code section 266i. Defendant relies upon *People* v. *Muniz* (1970) 4 Cal.App.3d 562 [84 Cal.Rptr. 501], in which a defendant was charged with battery upon a police officer with the evidence indicating a scuffle at the scene of the arrest and another at

the police station. The *Muniz* court indicated that defendant should have demanded that the prosecution make an election as to which incident it was relying on since, otherwise, there was no basis for determining which incident the jury used as the basis for its verdict. (See *People* v. *Williams* (1901) 133 Cal. 165, 169 [65 P. 323].)

The rule of law exemplified by *Williams* and *Muniz* applies when a defendant is charged with a single-act offense but there are multiple acts placed before the trier of fact and each constitutes a separate and similar chargeable offense in itself. In such a case the prosecution must elect one of such acts as the basis for the prosecution. Otherwise, defendant is required to defend against all acts but with the result that "[n]o court can say from this record of which offense proven under this [information] the jury found the defendant guilty." (*People* v. *Hatch* (1910) 13 Cal.App. 521, 535 [109 P. 1097].) A defendant under such circumstances might well be convicted when part of the jury considers one offense proved and part thinks that a different offense was proved.

Thus, defendant before us argues that, under the information charging him with simply *one* act of violation of Penal Code section 266i committed "on or about and between June, 1975, and October, 1975," he was required to defend against approximately 1,000 separate acts of prostitution committed in a 5-month span as testified to by Jeanine.

Defendant misconceives the nature of Penal Code section 266i, subdivision (c). It is a one-act offense, but the offense is completed by a defendant's *act of procuring,* for a female, a place as an inmate in a house of prostitution. The offense is completed when the female involved becomes an inmate in a house and commits therein a single act of prostitution. The fact that, thereafter, the female commits numerous acts of prostitution in such house does not result in separate and additional offenses of pandering under subdivision (c) of section 266i of the Penal Code.

Penal Code section 266i (the pandering statute) is somewhat similar to Penal Code section 266h (the pimping statute). Under Penal Code section 266h, the offense is one ongoing offense—a defendant deriving support or maintenance from the earnings of a prostitute. (*People* v. *Lewis* (1978) 77 Cal.App.3d 455 [143 Cal.Rptr. 587].) Penal Code section 266i, subdivision (c), is similar to section 266h since, once the female is procured for a house of prostitution, the one offense becomes ongoing as long as the female plies her trade in such house. "The pandering statute and Penal

Code section 266h (pimping) are both designed to discourage prostitution by discouraging persons other than the prostitute from augmenting and expanding a prostitute's operation, or increasing the supply of available prostitutes." (*People* v. *Hashimoto* (1976) 54 Cal.App.3d 862, 867 [126 Cal.Rptr. 848].)

Defendant was not prejudiced by Jeanine's testimony that she had performed 1,000 sexual acts for money between June 1975 and October 1975, in the Cover Girl Studios and had earned $7,000 from this activity. Defendant's defense was that he had *not* hired Jeanine to perform *any* acts of prostitution and was not aware that she was performing sexual acts with his customers. If the court believed Jeanine's testimony regarding her conversation with defendant and his wife in their home in July 1975, and that Jeanine thereafter performed any acts of prostitution in a Cover Girl Studio, the single offense charged in the information had been committed. The number of sexual acts testified to by Jeanine in no way subjected defendant to being convicted unfairly. The issue presented to the trial judge was the question of Jeanine's credibility as a witness regarding her arrangements with defendant and defendant's denial of those arrangements.

The judgment of conviction is affirmed.

Kingsley, Acting P. J., concurred.

ALARCON, J.—I concur in the judgment. I would omit footnote two. Since it is admittedly pure dictum I would exercise judicial restraint and avoid the temptation of commenting unnecessarily in an area of the law already suffering from confusion.