Filed 7/30/13  P. v.  Ocegueda CA5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>INDALECIO OCEGUEDA, JR.,<br><br>    Defendant and Appellant. | F064351<br><br>(Super. Ct. No. F11905706)<br><br>**O P I N I O N** |

**THE COURT**\*

APPEAL from a judgment of the Superior Court of Fresno County.  James M. Petrucelli, Judge.

Carol Foster, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Tiffany J. Gates, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Gomes, Acting P.J., Kane, J., and Detjen, J.

A jury convicted appellant, Indalecio Ocegueda, Jr., of the offense commonly known as spousal abuse (Pen. Code, § 273.5, subd. (a)),[1] and in a separate proceeding, appellant admitted allegations that he had suffered a "strike"[2] and that he had served a prison term for a prior felony conviction (§ 667.5, subd. (b)). The court imposed a prison term of nine years, consisting of the four-year upper term on the substantive offense, doubled pursuant to the three strikes law (§§ 667, subds. (d) & (e)(1); 1170.12, subds. (b) & (c)(1)), plus one year on the prior prison term enhancement.

Appellant argues that there was evidence he committed two separate acts, each of which could constitute a violation of section 273.5, and therefore the trial court erred in failing to instruct, sua sponte, that jurors were required to unanimously agree on which act constituted the violation of section 273.5. We affirm.

### FACTS

City of Fresno Police Officer Billy Richards testified to the following: On October 1, 2011 (October 1), at 5:06 p.m., while investigating a report of a domestic disturbance, he made contact with Vanessa Ocegueda (Vanessa).[3] Vanessa, who "had swelling on the right side of her skull," told Richards the following: Appellant is her husband and the two have a child together. At approximately 1:30 p.m. to 1:45 p.m. on October 1, appellant "came over to the apartment and asked her to do his laundry," the

---

[1] All statutory references are to the Penal Code. Section 273.5, subdivision (a) (section 273.5(a)) provides, in relevant part: "Any person who willfully inflicts upon a person who is his ... spouse ... corporal injury resulting in a traumatic condition is guilty of a felony ...."

[2] We use the term "strike" as a synonym for "prior felony conviction" within the meaning of the "three strikes" law (§§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d)), i.e., a prior felony conviction or juvenile adjudication that subjects a defendant to the increased punishment specified in the three strikes law.

[3] For the sake of brevity and clarity, and not out of disrespect, we refer to Vanessa Ocegueda by her first name.

2

two argued "over how the laundry was going to be paid for," and appellant punched her in the face, causing the injury Richards observed. Thereafter, in an attempt to flee, Vanessa drove off in appellant's pickup but appellant chased her on foot and jumped into the bed of the truck. As Vanessa drove, appellant broke "a window to the truck," "somehow enter[ed] the cab," and "hit her again on the same spot on her head." Vanessa "told [Richards] specifically [that] on October the 1st about 5:00 in the evening that she was punched two times in the face by [appellant][.]"

Vanessa, in her testimony, gave a different account of events. She testified that on October 1, at approximately 1:30 p.m., she was doing laundry and she asked appellant to go to the store to get some quarters.[4] Appellant made three trips to the store. He forgot to get change the first two times and after returning from his third trip, Vanessa told him he had not obtained the amount she asked for. At that point, appellant became angry, called Vanessa a "stupid bitch"; attempted to break a mop he found in the couple's bathroom; grabbed Vanessa's cell phone out of her hand and threw it, breaking the phone; and began yelling at Vanessa. Appellant had hit Vanessa in the past "a few times" and Vanessa, fearing that he would do so again, grabbed the keys to appellant's pickup and walked "really fast" to the truck, got in and locked the doors. At that point, appellant approached, yelling, and began banging hard on the windows with his fist. Vanessa started the truck and drove off.

She returned to the apartment complex a while later and when she drove up, appellant approached and told her to get out of the truck. When Vanessa did not comply, appellant threatened to break the windows. He pulled on the driver's side door, hit the window twice with his palm and smashed a bottle against the driver's side window. Vanessa drove off, but appellant jumped into the bed of the truck. As Vanessa was

---

**4**     The remainder of our factual summary is taken from Vanessa's testimony.

3

driving, appellant stuck his hand through a "side window" and was "trying to ... pull it open" and, at the same time, grab Vanessa. Thereafter, he "ended up ripping the [back] window off" and somehow—Vanessa did not know how—"climbed in through the back window" and "got his body in" the back seat of the truck cab. At that point, Vanessa "slammed the brakes" and appellant "flew to the front seat and hit the dashboard." As he did so, some part of his body "grazed [Vanessa] and hit [her] face," "by [her] temple, [her] eye." Vanessa was able to jump out of the truck, and appellant drove away.

Vanessa denied telling Officer Richards that appellant punched her while they were at the apartment. She admitted telling the officer appellant punched her while they were in the truck, but claimed that, in fact, appellant did not punch her.

Officer Richards testified Vanessa did not tell him anything about "slamming on the brakes" or appellant "flying forward from the back of the truck" and "possibly one of his body parts hitting her in the face[.]"

## DISCUSSION

A jury verdict must be unanimous in a criminal case. (Cal. Const., art. I, § 16; *People v. Russo* (2001) 25 Cal.4th 1124, 1132.) Additionally, "when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]" (*Russo*, at p. 1132.) Therefore, "[a]s a general rule, when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty." (*People v. Jennings* (2010) 50 Cal.4th 616, 679.) The unanimity requirement "'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.'" (*Russo*, at p. 1132.)

4

Whether or not a unanimity instruction is requested, it should be given "'where the circumstances of the case so dictate.' [Citation.]" (*People v. Riel* (2000) 22 Cal.4th 1153, 1199.) "'Neither instruction nor election are required, however, if the case falls within the continuous course of conduct exception,' which arises [1] 'when the acts are so closely connected that they form part of one and the same transaction, and thus one offense' or [2] 'when ... the statute contemplates a continuous course of conduct [of] a series of acts over a period of time.'" (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1427 (*Hamlin*).)

The People argue that section 273.5 contemplates a continuous course of conduct and therefore falls under the second of the two exceptions to the unanimity instruction requirement set forth above. We agree. Section 273a punishes the acts generally classed as child abuse. (*People v. Ewing* (1977) 72 Cal.App.3d 714, 717 (*Ewing*).) In *Ewing* the court held that "[a]lthough the child abuse statute [section 273a] may be violated by a single act [citation], more commonly it covers repetitive or continuous conduct." (*Id.* at p. 717.) In *People v. Thompson* (1984) 160 Cal.App.3d 220 (*Thompson*), the appellate court followed *Ewing* in holding that spousal abuse is a statutory offense that, like child abuse, because of the ongoing nature of the crime, falls within the second category of the continuous course of conduct exception. (*Thompson*, at p. 225.)

Appellant argues *Thompson* is "not sound authority ...." He asserts that section 273.5 contains no "language that can be interpreted to contemplate a continuous course of conduct of a series of acts over a period of time." We disagree. On this point we find instructive *Hamlin*, *supra*, 170 Cal.App.4th 1412.

As indicated earlier, the crime of spousal abuse is committed by one who "willfully *inflicts* upon a ... spouse ... corporal injury resulting in a traumatic condition ...." (§ 273.5, subd. (a), italics added.) *Hamlin* interpreted section 206, which defines the crime of torture (§ 206) in similar terms. A person is guilty of torture if he

5

"*inflicts* great bodily injury" "with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose .…" (§ 206, italics added.)  The *Hamlin* court held that torture, like spousal abuse, "can be committed by a course of conduct." (*Hamlin*, *supra*, 170 Cal.App.4th at p. 1427.)  The defendant there argued that "the operative language of section 206—specifically, the word 'inflicts'—does not denote conduct that can occur over a period of time" because "'[i]nfliction of injury normally occurs as the result of a violent act' and '[t]he infliction of great bodily injury is not a gradual or continuous process.  It is a discrete criminal event.'" (*Id*. at p. 1428.)  The court in *Hamlin* rejected this argument: "'[C]ertain verbs in the English language denote conduct which occurs instantaneously, while other verbs denote conduct which can occur either in an instant or over a period of time.'" (*Id*. at p. 1427.)  "Defendant's argument is contradicted by the plain meaning of the word 'inflict,' which includes 'to cause (something unpleasant) to be endured.' (Merriam–Webster's Collegiate Dict. (11th ed. 2006) p. 641 col. 1.)  Obviously a person can be forced to endure something unpleasant over a period of time." (*Id.* at p. 1428.)  Thus, the use of the word "inflicts" in section 273.5 supports the conclusion that the statute contemplates a continuous course of conduct.

Appellant contends this interpretation runs afoul of the rule of statutory construction known as the rule of lenity, which generally requires that "ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." (*People v. Soria* (2010) 48 Cal.4th 58, 65 (*Soria*).)  Appellant argues that section 273.5(a) is ambiguous because, he asserts, the word "inflict" can denote *either* a "single act of battery" *or* a "course of conduct."  To give him the benefit of "reasonable doubt" he argues, the statute should be interpreted to criminalize only a single act, and not a continuous course of conduct.  We disagree.

6

The choice here is between two interpretations: the one urged by appellant, under which *only* a single act is proscribed, and another in which the statute can be violated by *either* a single act *or* a course of conduct. The rule of lenity "'applies "only if two reasonable interpretations of the statute stand in relative equipoise." [Citation.]' [Citations.]" (*Soria, supra*, 48 Cal.4th at p. 65.) That is not the case here. Given that the word "inflict" is one of those "verbs [that] denote conduct which can occur either in an instant or over a period of time'" (*Hamlin, supra*, 170 Cal.App.4th at p. 1427), the latter interpretation is more reasonable. Therefore, the rule of lenity does not compel the conclusion that section 273.5 can be violated only by the commission of a single act.

Appellant also argues that *Thompson* is distinguishable because in that case the charging document alleged a violation of section 273.5 based on "a course of conduct ... which had occurred between two designated dates" (*Thompson, supra*, 160 Cal.App.3d at p. 225), whereas in the instant case it was alleged that the section 273.5 violation occurred on a single day. Again, we disagree. As indicated above, although there was evidence of two acts, either of which could constitute a violation of section 273.5, occurring on the same day, the evidence shows that those acts were separated by time. The fact that the course of conduct occurred on one day, rather than over multiple days as in *Thompson*, does not distinguish *Thompson*.

Appellant also argues, without citation to case authority, that to construe section 273.5 as contemplating a course of conduct is tantamount to allowing the prosecution to establish a violation of the statute by "impermissibly amalgamat[ing] multiple acts, no one of which by itself constitutes a spousal battery," thereby "impermissibly lessen[ing] the prosecutor's burden of proof," in violation of appellant's constitutional right to due process of law. There is no merit to this contention.

Under California law, there are numerous "areas where it is possible a series of acts, which if individually considered, might not amount to a crime, but the cumulative

7

effect is criminal," e.g., "child abuse ([*Ewing*, *supra*,] 72 Cal.App.3d 714, 717), failure to provide for a minor child (*People v. Morrison* (1921) 54 Cal.App. 469, 471), and pandering (*People v. White* (1979) 89 Cal.App.3d 143, 151.)" (*People v. Epps* (1981) 122 Cal.App.3d 691, 702.) There is no constitutional infirmity in such statutes. (See *People v. Albritton* (1998) 67 Cal.App.4th 647, 660 ["It is the Legislature's prerogative to define crimes"].)

We agree with the reasoning and result in *Thompson*. Section 273.5 contemplates a continuous course of conduct. Therefore, no unanimity instruction was required. Moreover, even if the circumstances had warranted such an instruction, we would find the court's failure to give the instruction harmless, regardless of whether we apply the "harmless beyond a reasonable doubt" standard of *Chapman v. California* (1967) 386 U.S. 18, 24 or the prejudice test of *People v. Watson* (1956) 46 Cal.2d 818, 836, which is whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (See *People v. Vargas* (2001) 91 Cal.App.4th 506, 561–562 [noting "split of authority on the proper standard for reviewing prejudice when the trial court fails to give a unanimity instruction"]; *People v. Milosavljevic* (2010) 183 Cal.App.4th 640, 647 [same].)

Appellant argues that he presented different defenses with respect to each act. He claimed, relying on Vanessa's trial testimony and contrary to Officer Richards's testimony regarding his interview of Vanessa on October 1, he did not strike Vanessa in the apartment and he accidentally struck her later in the moving truck. Therefore, he argues, "Based upon the evidence in [the instant] case, some jurors could have decided beyond a reasonable doubt that the incident in the apartment constituted the offense while other jurors could have decided beyond a reasonable doubt that the incident inside the cab of the pick-up truck constituted the offense."

8

We recognize that any erroneous failure to give the unanimity instruction cannot be considered harmless under the rule that where a defendant offers the same defense to all criminal acts, and "the jury's verdict implies that it did not believe the only defense offered," failure to give a unanimity instruction is harmless error. (*People v. Diedrich* (1982) 31 Cal.3d 263, 283.) However, failure to give a unanimity instruction is also harmless "if the record indicated the jury resolved the basic credibility dispute against the defendant and would have convicted the defendant of *any* of the various offenses shown by the evidence .…" (*People v. Jones* (1990) 51 Cal.3d 294, 307.)

The basic credibility dispute here pitted Vanessa's account of events according to Officer Richards's testimony against her account of events according to her own testimony. Vanessa's testimony was that appellant accidentally struck her once. Had the jury found that testimony credible, no conviction would have been possible since that version of events would have exculpated appellant completely. (§ 273.5(a) [offense requires "*willful*[] inflict[ion]" of injury (italics added)].) Moreover, there is nothing in Officer Richards's telling of Vanessa's account that suggests any basis upon which the jury would believe part of that account but not other parts. Thus, it is reasonable to conclude that all jurors believed beyond a reasonable doubt that appellant willfully struck Vanessa at the apartment complex and in the truck. Accordingly, any error in failing to give a unanimity instruction was harmless under any standard.

## DISPOSITION

The judgment is affirmed.

9