[No. G039038. Fourth Dist., Div. Three. Jan. 22, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
LATROY LAMONT ALBERT WAGNER, Defendant and Appellant.

## COUNSEL

Terrence Verson Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry Carlton and Elizabeth A. Hartwig, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEDSWORTH, Acting P. J.**—In *Keeler v. Superior Court* (1970) 2 Cal.3d 619, 632 [87 Cal.Rptr. 481, 470 P.2d 617], our Supreme Court reminded us that, "Although the Penal Code commands us to construe its provisions 'according to the fair import of their terms, with a view to effect its objects and to promote justice' (Pen. Code, § 4), it is clear the courts cannot go so far as to create an offense by enlarging a statute, by inserting or deleting words, or by giving the terms used false or unusual meanings. [Citation.] Penal statutes will not be made to reach beyond their plain intent; they include only those offenses coming clearly within the import of their language. [Citation.]" In this case we reluctantly conclude that adherence to that adjuration requires reversal of this conviction and divergence with some 30-year-old case law.

Latroy Lamont Albert Wagner appeals his conviction for the crime of pandering (Pen. Code, § 266i, subd. (a)(2)).[1] He contends the court erred by instructing the jury that pandering includes a situation where the defendant encourages or solicits one who is already a prostitute to "change her business relationship," i.e., to work for him rather than continuing to ply her trade without a pimp. We conclude the contention has merit. The Penal Code[2] provision Wagner was charged with violating in this case states that pandering occurs when defendant, "[b]y promises, threats, violence, or by any device or scheme, causes, induces, persuades or encourages another person *to become* a prostitute." (§ 266i, subd. (a)(2), italics added.) And the evidence here is undisputed that the young woman Wagner was accused of "inducing" was already a prostitute—indeed that she was engaged in soliciting business at the very time he is alleged to have been "encouraging" her to begin working for him.

Under those circumstances, Wagner cannot be guilty of a crime defined as "induc[ing], persuad[ing] or encourag[ing]" the young woman "*to become* a prostitute." The cases which suggest that the described crime would also include a situation in which the defendant encourages one he knows to already be a prostitute "to change her business relations"; i.e., to begin plying her trade in his employ, simply cannot withstand scrutiny, and thus do not support a "modified" instruction which deviates from the statutory language.

In light of our determination that the challenged jury instruction impermissibly expanded the scope of the pandering crime for which Wagner was convicted, his conviction must be reversed, and we do not reach the other issues raised by Wagner on appeal.[3]

## FACTS

The facts in this case are fairly simple, and for purposes of this appeal, essentially undisputed. On the night of May 12, 2006, Officer Roger Tolusa of the Santa Ana Police Department was driving an unmarked vehicle on a particular portion of Harbor Boulevard in Santa Ana known to be a "track" for prostitutes. Tolusa was posing as a "john," attempting to procure the services of a prostitute. He spotted a young woman, J.H., as she was walking along the sidewalk and occasionally stopping to peer into cars. Tolusa

---

[1] Because the woman in question was a minor over the age of 16, Wagner's crime was deemed a felony under Penal Code section 266i, subdivision (b)(1). For ease of discussion we refer throughout to section 266i, subdivision (a)(2) which defines the underlying crime.

[2] All further statutory references are to the Penal Code.

[3] Wagner also argued that the evidence was insufficient to support his conviction for other reasons, and that the court had erred in refusing to instruct the jury on a lesser included offense of "attempted pandering."

concluded she was a prostitute, and attempted to maneuver his car into position to make contact with her.

Tolusa observed a blue Toyota approach J.H., and saw her turn her head toward the car, apparently because the driver had said something to her through the open window. However, rather than come nearer to the car, J.H. walked away from it at a fast pace. Based upon J.H.'s attempt to avoid contact with the driver, Tolusa believed that J.H. did not regard him as a potential customer. Tolusa consequently suspected that the occupant of the Toyota might be a pimp, and contacted another officer with a request that he keep tabs on the Toyota.

Tolusa then observed the blue Toyota follow J.H., and heard the driver say something to her, although he could not hear clearly enough to discern what was said. J.H. glanced toward the Toyota, and then toward Tolusa's car. Then after making eye contact with Tolusa, she got into his car and said "let's get out of here," which they did.

J.H. herself testified that she had already been a prostitute for two years at the time of the events at issue here, and that during those two years she had sometimes worked with a pimp. She claimed that both her father and grandfather were pimps, and that she had known pimps all her life. J.H. stated that on the night of May 12, 2006, she was on Harbor Boulevard working as a prostitute when a man she subsequently identified as Wagner called out to her from a car. She could not initially remember what he said, but stated he "was talking like he was a pimp." J.H. ignored him. He called out to her two more times, including imploring her to "come fuck with this pimp," but she continued to ignore him. J.H. felt certain that Wagner was a pimp, rather than a potential customer, so she wanted nothing to do with him.

Tolusa's partner, Officer David Lima, searched Wagner's blue Toyota after officers had stopped him. Inside the car, Lima found multiple cell phones, and other paraphernalia he viewed as consistent with Wagner's being a pimp. While they were searching the car, one of the cell phones rang. Lima answered it, and a woman said "Daddy, Daddy, where are you?" She then reported, to the person she believed owned the phone, that an unidentified male "doesn't want to take me back to the track. He says he needs to get back on the freeway." Lima identified himself as a police officer, and informed her that her "daddy" was going to jail. He then put Wagner on the phone, and directed him to tell the woman he was going to jail. Wagner complied.

Based upon the events they witnessed, both Tolusa and Lima believed Wagner was a pimp. Tolusa opined that Wagner was soliciting J.H. to work for him when he called out to her from his car.

Wagner was subsequently charged with pandering in violation of section 266i, subdivision (a)(2), which specifically prohibits "caus[ing], induc[ing], persuad[ing] or encourag[ing] another person to become a prostitute."[4]

At trial, the prosecutor requested jury instructions including a modified version of CALCRIM No. 1151, which defines the crime of pandering. The modification requested by the prosecutor added additional language specifying that the prohibition on pandering "applies to cases in which a defendant solicits one whom he believes presently to be a prostitute to change her business relations."

The prosecutor explained that the modification was necessary, to avoid any juror confusion about the fact that J.H. was already a prostitute at the time she had allegedly been importuned by Wagner—a scenario that did not fit clearly within the statutory language which states the crime involves soliciting someone to "become" a prostitute. The prosecutor argued that the modification was supported by case law that had interpreted the crime of pandering rather more broadly than the statute. (See, e.g., *People v. Bradshaw* (1973) 31 Cal.App.3d 421, 426 [107 Cal.Rptr. 256]; *People v. Hashimoto* (1976) 54 Cal.App.3d 862 [126 Cal.Rptr. 848].)

As the prosecutor conceded, "There's no indication [J.H.] ever left her profession . . . . [¶] The way the CALCRIM is written, it says that the defendant used promises, threats, et cetera, to encourage—persuade or encourage her to become a prostitute. Well, the evidence is very clear [J.H.] was already a prostitute. [¶] Element number 2 is that the defendant intended to influence J.H. to be a prostitute. Again, she already was a prostitute."

The prosecutor then explained "I don't want the jury to be confused as to, well, *maybe this doesn't apply because she's already a prostitute* so he's not trying to get her to do something that she wasn't already doing. *I think it's important to guide the jury and let them know that the pandering statute applies* to those who are former prostitutes and who are current prostitutes." (Italics added.)

Wagner's counsel objected to the inclusion of the "changed business relations" language, arguing that because the cases this language was taken from had been around for decades, and the CALCRIM instruction had been revised recently, it appeared the instruction's drafters had made a conscious decision to omit that language from their definition of pandering: "They clearly were aware of those cases and the rules, [so] the framers of this

---

[4] Wagner was also charged with violating subdivision (b)(1) of section 266i, which specifically governs pandering "with another person who is a minor . . . [¶] . . . over the age of 16 years." (§ 266i, subd. (b)(1).) J.H. was 17 years of age at the time of the events at issue.

instruction must for some good reason thought fit to leave that out. And so I would side with their wisdom for whatever it is to leave that language out of there and just, you know, go with what 1151 says." Although counsel questioned the propriety of the "changed business relations" language used in *Bradshaw* and *Hashimoto*, he did acknowledge those cases had not been overruled.

The court then concluded that although it was not "completely thrilled" with the "changed business relationship" language—which it characterized as "a little ambiguous"—it would nonetheless add that language into the jury instruction. The court noted that "occasionally there are circumstances that arise that are not covered completely by the form instructions, and I have to go a little bit beyond them. [¶] I think this is a case that adding that one line does not misstate the law. It is an accurate statement of the law, and it addresses a potential issue based on the evidence that we have heard."

## DISCUSSION

Wagner contends the court erred in giving a modified jury instruction, which specifically defines the pandering crime charged against him in a manner which is inconsistent with the language of section 266i, subdivision (a)(2) and thus confused the jury. As Wagner points out, the statute provides that the charged crime occurs when a defendant has solicited someone to "become" a prostitute, and the undisputed evidence in this case demonstrates that the young woman he was accused of soliciting was already a prostitute when he approached her. The trial court spanned that gap, over Wagner's express objection, by acceding to the prosecutor's request that it add language to the instruction specifying that the crime of pandering applied to situations in which the defendant "solicits one whom he believes presently to be a prostitute to change her business relations."

The prosecution first argues that Wagner has waived any objection to the allegedly erroneous instruction, because although he did object to the prosecutor's proposed modification, he did not request a "correction or clarification" of the instruction. There are two problems with this contention. First, it is difficult to conceive of a "clarification" that might have resolved the alleged problem created by the prosecutor's requested modification. The purpose of the modification was to expressly inform the jury that the pandering crime charged against Wagner *was not limited to* situations in which the defendant had attempted to induce a woman who was not currently a prostitute to "become" one, as the statute seemed to provide. The only possible "clarification" that might have addressed that concern would have been something along the lines of "Yes, it is." That is precisely what the defense was arguing against.

Second, as the prosecution acknowledges, a reviewing court can address the issue of instructional error even in the absence of a requested clarification, "if the defendant's substantial rights were affected by the error." (Citing § 1259.)[5] This would qualify as such a situation. What Wagner is suggesting is that the modified jury instruction given in this case created a definition of "pandering" that is simply not consistent with the statutory language. Moreover, because the evidence in this case is undisputed that the young woman Wagner was alleged to have induced was already a prostitute, the alleged inconsistency is crucial. If we were to conclude the pandering crime Wagner was charged with actually is limited to the inducement of someone who is *not* currently a prostitute, then the undisputed evidence would demonstrate that Wagner's conviction was likewise inconsistent with the statutory language. In light of this substantial concern, we have no choice but to address the issue on the merits.

On the merits, the prosecution's position is that the added language concerning changed "business relations" is justified by *People v. Bradshaw, supra*, 31 Cal.App.3d 421, and the cases that follow it, including *People v. Hashimoto, supra*, 54 Cal.App.3d 862, and *People v. Patton* (1976) 63 Cal.App.3d 211, 216 [133 Cal.Rptr. 533]. We cannot agree.

To be sure, those cases do support the proposition that pandering, as defined by section 266i, subdivision (a)(2) includes the solicitation of a person who is already a prostitute; the problem is that they do so in an utterly unconvincing fashion. The seminal case is *Bradshaw*, which merely announces the rule, while frankly admitting it is based entirely on the outcome of another case—*People v. Frey* (1964) 228 Cal.App.2d 33 [39 Cal.Rptr. 49]—which the *Bradshaw* court expressly acknowledges *did not actually address the issue: "People v. Frey gives us a clue*. In that case, one count as to which defendant's conviction was sustained involved (as here) an undercover policewoman. She had gone to considerable trouble to set up (with the aid of the other undercover officers) the appearance of being an independent prostitute who 'picked up' customers in a hotel bar, and she told Frey that she was so engaged. *The opinion makes no reference to the contention now urged, but its result is, clearly, in opposition to that contention. We feel impelled, lacking any more express authority, to follow the* Frey *result.* [¶] Clearly, the conduct described in subdivisions (a), (c), (d) and (e) covers conduct with either experienced or innocent women. Subdivisions (a) and (c)

---

[5] Section 1259 provides: "Upon an appeal taken by the defendant, the appellate court may, without exception having been taken in the trial court, review any question of law involved in any ruling, order, instruction, or thing whatsoever said or done at the trial or prior to or after judgment, which thing was said or done after objection made in and considered by the lower court, and which affected the substantial rights of the defendant. The appellate court may also review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."

appear to require success; subdivision (d) seems to be directed at the coercion of a prostitute who wants to quit. *Against this background,* [former] *subdivision (b) serves a legitimate purpose if construed as defendant contends, namely to inhibit efforts to recruit innocent women into the field of prostitution.* But, *as applied in Frey,* it covers also cases where a defendant has solicited one whom he believes to be a former prostitute to re-enter the profession *and a defendant who solicits one whom he believes presently to be a prostitute to change her business relations."* (*People v. Bradshaw, supra,* 31 Cal.App.3d at p. 426, italics added.)

We can certainly sympathize with the *Bradshaw* court. Its opinion explicitly acknowledges that it was groping for a solution without any precedential illumination.

■ However, it is well settled that " 'cases are not authority for propositions not considered.' " (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 198 [96 Cal.Rptr.2d 463, 999 P.2d 686], quoting *People v. Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580].) And thus it is clear that *Frey,* which simply did not address the issue of whether section 266i, subdivision (a)(2) might apply to solicitations of one whom defendant believes is *already* a prostitute, did not provide any meaningful support for the rule created in *Bradshaw.* We cannot find any support for it anywhere else, and we cannot find anything in the legislative scheme to suggest it required creation of a separate crime for encouraging someone already in the business to change management. The *Bradshaw* court found, in former subdivision (b) (now subd. (a)(2)) of section 266i, an answer to a question no one in the Legislature seems to have asked.

The *Bradshaw* "rule" was then adopted without serious question by both *Hashimoto* and *Patton.* To be fair, the *Patton* court did endeavor to explain why social policy *might be expected to condemn* the solicitation of one believed to be a current prostitute, just as it does the solicitation of one believed to be of a more "innocent" character[6]—but that explication seems to us to omit an analysis of the statutory language to ascertain whether social policy *has in fact done* what it "might be expected" to do.

---

[6] As the *Patton* court explained, "the relevant social policy question is the potential for harm which defendant's conduct reveals. A substantial potential for social harm is revealed even by the act of encouraging an established prostitute to alter her business relations. Such conduct indicates a present willingness to actively promote the social evil of prostitution. 'The purpose of the anti-pandering statute (. . . § 266i) is to ". . . cover all the various ramifications of the social evil of pandering and include them all in the definition of the crime, with a view of effectively combating the evil sought to be condemned." (*People v. Montgomery* [(1941)] 47 Cal.App.2d 1, . . . 24 [117 P.2d 437].)' (*People v. Fixler,* 56 Cal.App.3d 321, 327 [128 Cal.Rptr. 363].)" (*People v. Patton, supra,* 63 Cal.App.3d at p. 218.)

■ As Wagner points out, what these cases illustrate, more than anything else, is the danger inherent in simply incorporating language taken from an appellate opinion into a jury instruction. "[J]udicial opinions are not written as jury instructions and may be notoriously unreliable as such . . . ." (*Delos v. Farmers Group, Inc.* (1979) 93 Cal.App.3d 642, 656 [155 Cal.Rptr. 843]; see also *Francis v. City & County of San Francisco* (1955) 44 Cal.2d 335, 341 [282 P.2d 496] ["it is dangerous to frame an instruction upon isolated extracts from the opinions of the court."].)

It is thus left to us to ascertain whether the crime of pandering set forth in section 266i, subdivision (a)(2) actually encompasses the situation we have before us: i.e., one in which the defendant has induced or encouraged a woman currently engaged in prostitution to commence working for him. We begin with two seemingly inconsistent propositions.

First is the proposition that "[i]f a penal statute is susceptible of more than one meaning, the statute must be construed in defendant's favor unless such a construction would be unreasonable, absurd or contrary to the legislative intent underlying the statute. [Citations.]" (*People v. Jimenez* (1992) 11 Cal.App.4th 1611, 1626 [15 Cal.Rptr.2d 268]; see also *People v. Kroncke* (1999) 70 Cal.App.4th 1535, 1558–1559 [83 Cal.Rptr.2d 493] (conc. & dis. opn. of Corrigan, J.) ["If the language is ambiguous, standard rules of construction require that a statute imposing penal consequences be narrowly construed. . . . When the government requires its citizens to do something under threat of penal consequence, its pronouncement must be clear. A citizen is not obligated to guess what conduct is required or suffer a criminal penalty if he divines wrongly. He is required to do what the law says, but no more. . . . If the Legislature wants to clarify its requirement, it is certainly free to do so. We are not empowered to criminalize conduct by judicial ukase, or to punish that which the Legislature has not brought within its penal reach. To attempt to do so is a violation of the separation of powers provision of the California Constitution. (Art. III, § 3; see also *People v. Lim* (1941) 18 Cal.2d 872 [118 P.2d 472]; *Chapman v. Aggeler* (1941) 47 Cal.App.2d 848, 853 [119 P.2d 204].)" (Citation omitted.)].) But a second proposition, embodied in section 4, is that "[t]he rule of the common law, that penal statutes are to be strictly construed, has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."

■ Luckily, our Supreme Court has reconciled these seemingly inconsistent notions in *People v. Avery* (2002) 27 Cal.4th 49, 57–58 [115 Cal.Rptr.2d 403, 38 P.3d 1]: "On the one hand, we have repeatedly stated that when a statute defining a crime or punishment is susceptible of two reasonable interpretations, the appellate court should ordinarily adopt that interpretation

more favorable to the defendant. (E.g., *People v. Garcia* (1999) 21 Cal.4th 1, 10 [87 Cal.Rptr.2d 114, 980 P.2d 829]; *People v. Gardeley* (1996) 14 Cal.4th 605, 622 [59 Cal.Rptr.2d 356, 927 P.2d 713].) This rule has constitutional underpinnings. ' "Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability. [Citation.] ('[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity')." ' (*People ex rel. Lungren v. Superior Court* [(1996)] 14 Cal.4th [294,] 313 [58 Cal.Rptr.2d 855, 926 P.2d 1042], quoting *Liparota v. United States* (1985) 471 U.S. 419, 427 [85 L.Ed.2d 434, 105 S.Ct. 2084].) On the other hand, section 4 provides: 'The rule of the common law, that penal statutes are to be strictly construed, has no application to this Code. All of its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice.' . . . [¶] Although some tension exists between these two lines of authority, we believe they can be reconciled. (See, e.g., *Bowland v. Municipal Court* (1976) 18 Cal.3d 479, 487–488 [134 Cal.Rptr. 630, 556 P.2d 1081]; *Ex Parte Rosenheim* (1890) 83 Cal. 388, 391 [23 P. 372] [citing both].) As Witkin explains, 'The rule [of lenity] applies only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule.' (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Introduction to Crimes, § 24, p. 53.) In *People v. Jones* (1988) 46 Cal.3d 585, 599 [250 Cal.Rptr. 635, 758 P.2d 1165], we described the rule of lenity in a way fully consistent with section 4: 'The rule of statutory interpretation that ambiguous penal statutes are construed in favor of defendants is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable.' [¶] Thus, although true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent."

To be sure, the rule of lenity is to be used sparingly. It has application only where the statute itself is unclear. If the statutory language is clear, there is no need to employ maxims of interpretation such as the rule of lenity.

We feel this statute is clear. The language defining the crime as occurring when a defendant induces or encourages someone else to "become a prostitute" seems fairly clear in its exclusion of efforts to importune someone currently engaged in that profession to change management. If the Legislature had wanted a more broadly applicable provision, it could have easily replaced the phrase "become a prostitute" with the phrase "engage in prostitution." We cannot simply assume it meant the latter when it said the former.

We understand the point that interpreting section 266i, subdivision (a)(2) to apply to encourage a prostitute to change management or begin working for a pimp might make the statutory scheme more effective. But that is a legislative call, not a judicial one. We could not apply the statute requiring a full stop at stop signs to also apply to yield signs or flashing yellow lights simply because we thought full stops would always be safer, and we cannot apply subdivision (a)(2) of section 266i to persons who are already prostitutes just because it seems to be a more efficient means of enforcement.

But if we viewed it as ambiguous, we would have to apply the rule of lenity, which would lead us to the same result: No one reading this statute would think it applied to approaching a prostitute to discuss managing her, so it cannot be read to prohibit this conduct.

■ Moreover, interpreting this particular provision of section 266i in accordance with its somewhat narrow terms is consistent with the overall scheme of the statute, which defines the crime of pandering not as one all-encompassing genre of behavior, but rather in terms of a series of fairly precise, and distinct, scenarios. What the statute criminalizes is the conduct of anyone who: "(1) Procures another person for the purpose of prostitution. [¶] (2) By promises, threats, violence, or by any device or scheme, causes, induces, persuades or encourages another person to become a prostitute. [¶] (3) Procures for another person a place as an inmate in a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state. [¶] (4) By promises, threats, violence or by any device or scheme, causes, induces, persuades or encourages an inmate of a house of prostitution, or any other place in which prostitution is encouraged or allowed, to remain therein as an inmate. [¶] (5) By fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, procures another person for the purpose of prostitution, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution. [¶] (6) Receives or gives, or agrees to receive or give, any money or thing of value for procuring, or attempting to procure, another person for the purpose of prostitution, or to come into this state or leave this state for the purpose of prostitution." (§ 266i, subd. (a).)

■ This looks to us like a Legislature taking pains to be precise in what it was prohibiting. In light of the otherwise quite narrow terminology employed to define the various types of pandering included within the purview of section 266i—as well as the obvious alternative language the Legislature could have employed in subdivision (a)(2) if it had wished to create a broader crime—we simply cannot accept that the Legislature intended the language actually used in that subdivision be interpreted as loosely

as the precedent relied upon by the trial court in this case. We consequently conclude that the crime defined by section 266i, subdivisions (a)(2) and (b)(1), does not occur when the person being "induce[d], persuade[d] or encourage[d]" by a defendant is *currently* a prostitute.

And because the undisputed evidence in this case establishes that the young woman whom Wagner was accused of encouraging to become a prostitute was already engaged in prostitution, the judgment convicting him of pandering in violation of section 266i, subdivision (b)(1), is reversed.

Aronson, J., and Ikola, J., concurred.