173 Cal.App.4th 1221 (2009)
___ Cal.Rptr.3d ___
THE PEOPLE, Plaintiff and Respondent,
v.
JOMO ZAMBIA, Defendant and Appellant.
No. B207812.
Court of Appeals of California, Second District, Division Five.
May 12, 2009.
*1223 Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Paul M. Roadarmel, Jr., and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
KRIEGLER, J. 
Defendant and appellant Jomo Zambia was convicted of pandering in violation of Penal Code section 266i, subdivision (a)(2),[1] by encouraging Officer Erika Cruz to become a prostitute. He was sentenced to the middle term of four years in prison. In his timely appeal, defendant contends there was constitutionally insufficient evidence to support his conviction. Alternatively, he argues the evidence only supported a conviction for attempted pandering. We disagree and affirm.

STATEMENT OF FACTS
On the evening of June 8, 2007, Officer Cruz was conducting an undercover investigation in an area known for prostitution activity on Sepulveda Boulevard in Van Nuys. Defendant drove past her in a Ford pickup truck, looked in her direction, made a U-turn, and stopped next to her at the corner of Sepulveda and Valerio. In her experience, this was typical of how pimps and "johns" (prostitution customers) drive in that area. Defendant rolled down his window and asked the officer to get into his vehicle. Officer Cruz asked defendant, "what for?" and "he said that he was a pimp." The officer told him to back up so they could talk.
Officer Cruz saw cell phones on the pickup's center console.[2] Defendant again told her to get into his car. When the undercover officer asked why, *1224 defendant repeated that he was a pimp. She asked what he meant. Defendant said he would "take care of" her. Defendant asked how much money she had with her. Hearing that she had $400, defendant told her that if she gave it to him, defendant would provide her with housing and clothing. When Officer Cruz expressed some misgivings about getting into defendant's car, he said he was "a legit business man," waived a business card at her, and said he would not "strongarm" her. In her experience, pimps, prostitutes, and their customers use the term "strongarm" to mean the forceful taking of a prostitute's cash.
Defendant used a very aggressive tone of voice and demeanor during this conversation. Based on Officer Cruz's training and experience, defendant was behaving like a "gorilla pimp"persons who used "verbal threats and violence to get their way and to scare prostitutes into working for them." Officer Cruz asked if she could continue to work in the Sepulveda area. Defendant said, "yes, and that he would just take care of [her]." At that point, Officer Cruz directed defendant to drive across the street. She signaled to her partners, who arrived and arrested defendant.
Officer Paschal testified that in her experience, pimps place their prostitutes on the street, where they perform sex acts for money. The prostitute will turn the money over to the pimp, who will provide the prostitutes with food, clothing, and other services. Sergeant Alan Kreitzman was in charge of the investigation that night. In his experience, pimps carry business cards for legitimate businesses, which they provide to their prostitutes to give the false appearance of being involved in a legal trade. Where a john will be very circumspect in approaching a prostitute, pimps typically approach them in a direct, aggressive manner.

Defense
According to defendant's mother, Barbara Zambia, her son lived at home with her and her husband at the time of the incident. The family owned a janitorial business, First Class Building Maintenance. Defendant was employed in the business as a janitor. Although his hours varied, defendant usually worked 40-hour weeks, on evenings from approximately 6:00 p.m. to 12:30 a.m. Defendant carried one working cell phone, but had a broken one in the car, along with one he had borrowed from a friend. Two of the phones found in his car were purchased by defendant's father.
Defendant had recently become engaged to Celina Payano. They have an infant daughter. Payano works for the Los Angeles County Probation *1225 Department. Payano confirmed that defendant's work hours varied along the lines described by his mother, but Payano also added that defendant often returned to the jobsite to pick up equipment in the morning hours. She recognized all three cell phones found in defendant's pickup truck. She had no reason to think defendant also worked as a pimp.

DISCUSSION
In reviewing a challenge of the sufficiency of evidence, we "consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. . . . The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt." (People v. Mincey (1992) 2 Cal.4th 408, 432 [6 Cal.Rptr.2d 822, 827 P.2d 388]; see People v. Hayes (1990) 52 Cal.3d 577, 631 [276 Cal.Rptr. 874, 802 P.2d 376].) Our sole function is to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Jackson v. Virginia (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781]; see People v. Bolin (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374] (Bolin); People v. Marshall (1997) 15 Cal.4th 1, 34 [61 Cal.Rptr.2d 84, 931 P.2d 262].) The standard of review is the same in cases where the prosecution relies primarily on circumstantial evidence. (People v. Rodriguez (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618]; People v. Stanley (1995) 10 Cal.4th 764, 792 [42 Cal.Rptr.2d 543, 897 P.2d 481]; People v. Bloom (1989) 48 Cal.3d 1194, 1208 [259 Cal.Rptr. 669, 774 P.2d 698].) The California Supreme Court has held, "[r]eversal on this ground is unwarranted unless it appears `that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (Bolin, supra, 18 Cal.4th at p. 331, quoting People v. Redmond (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)
(1) As is relevant in this appeal, a person is guilty of pandering if he or she "causes, induces, persuades or encourages another person to become a prostitute" by "promises, threats, violence, or by any device or scheme." (§ 266i, subd. (a)(2).) (2) Defendant initially argues that his statements were too nebulous to be considered as encouragement under the statute because he neither offered the undercover officer anything concrete in terms of remuneration nor detailed the scope of her prospective prostitution activities. The record shows otherwise. Defendant, who carried with him some of the accoutrements typical of a pimp, represented himself as a "pimp" to a person posing as a prostitute in a location known for prostitution activity. He *1226 repeatedly requested that the undercover officer come along with him and told her that he would provide her with housing and clothing in exchange for her cash. This is consistent with the typical pimp/prostitute relationship whereby a prostitute turns over money to the pimp, who provides the prostitute with food, clothing, and other services in return. This was substantial evidence of inducement, persuasion, or encouragement for Officer Cruz to engage in prostitution on defendant's behalf.
(3) "The pandering statute and Penal Code section 266h (pimping) are both designed to discourage prostitution by discouraging persons other than the prostitute from augmenting and expanding a prostitute's operation, or increasing the supply of available prostitutes." (People v. Hashimoto (1976) 54 Cal.App.3d 862, 867 [126 Cal.Rptr. 848].) In that context, to encourage "means to urge, foster, stimulate, to give hope or help." (Ibid.) "[S]uccess is not a necessary element of the offense proscribed by the word `encourage' as used in subdivision (b) of section 266i." (People v. Bradshaw (1973) 31 Cal.App.3d 421, 425 [107 Cal.Rptr. 256]; see People v. Hashimoto, supra, at p. 866 ["neither success nor consummation of the proposal was a necessary element of a violation of the pandering statute"].)
Nor does pandering require proof of a remuneration scheme. "The fact that the defendant apparently was not to receive any money from the venture directly is not fatal to the conviction. The purpose of the anti-pandering statute [citation] is to `cover all the various ramifications of the social evil of pandering and include them all in the definition of the crime, with a view of effectively combating the evil sought to be condemned.' [Citations.]" (People v. Hashimoto, supra, 54 Cal.App.3d at p. 866.) As our colleagues in Division Two of this district have explained, "we know of no statutory or case law requiring that payment be made to the person actually providing sexual favors. Neither can we conceive of any basis for so limiting the definition of prostitution. It is doubtless not uncommon for prostitutes associated with pimps or panderers to be denied the proceeds of their labors. To permit those exploiting these individuals to escape prosecution merely by diverting the fees paid for their services would severely undermine efforts to combat commercial endeavors in which the government has been found to have a legitimate and substantial interest." (People v. Bell (1988) 201 Cal.App.3d 1396, 1400 [248 Cal.Rptr. 57].)
Defendant relies on the recent decision in People v. Wagner (2009) 170 Cal.App.4th 499 [87 Cal.Rptr.3d 881] (Wagner), which held as a matter of statutory construction that section 266i, subdivision (b)(1), does not apply *1227 where the person solicited to engage in prostitution is known to be an active prostitute currently plying his or her trade for someone else. According to the Wagner court, the statutory "language defining the crime as occurring when a defendant induces or encourages someone else to `become a prostitute,' seems fairly clear in its exclusion of efforts to importune someone currently engaged in that profession to change management." (170 Cal.App.4th at p. 509.) It therefore concluded that "the crime defined by section 266i, subdivisions (a)(2) and (b)(1), does not occur when the person being `induce[d], persuade[d] or encourage[d]' by a defendant is currently a prostitute." (Id. at p. 511.) Whatever the merits of Wagner's rationale and holding might be[3] and we have no occasion to assess themthat decision has no application to defendant's appeal. The determinative and undisputed evidence in Wagner established "that the young woman whom Wagner was accused of encouraging to become a prostitute was already engaged in prostitution . . . ." (170 Cal.App.4th at p. 511.) Here, in contrast, there was no evidence that Officer Cruz was already engaged in prostitution, and she testified on cross-examination, "I don't have a pimp."
(4) Nor is defendant correct in asserting he could be convicted of nothing more than the inchoate offense of attempted pandering because Officer Cruz had no intention of prostituting herself on behalf of defendant. As the plain wording of the statute makes clear, the crime of pandering is complete when, as relevant here, the accused "encourages another person to become a prostitute" by "promises, threats, violence, or by any device or scheme." (§ 266i, subd. (a)(2).) It follows that "success is not a necessary element of the offense proscribed by the word `encourage' as used in subdivision (b) of section 266i."[4] (People v. Bradshaw, supra, 31 Cal.App.3d at p. 425; see People v. Hashimoto, supra, 54 Cal.App.3d at p. 866.) This is consistent with the statute's policy aims: "A substantial potential for social harm is revealed even by the act of encouraging an established prostitute to alter her business relations. Such conduct indicates a present willingness to actively promote the social evil of prostitution." (People v. Patton, supra, 63 Cal.App.3d at p. 218.)

*1228 DISPOSITION
The judgment is affirmed.
Turner, P. J., and Armstrong, J., concurred.
NOTES
[1] All further statutory references are to the Penal Code.
[2] Officer Kathyrn Paschal testified that when she arrested defendant, she found three cell phones, some condoms, and a business card on the pickup's center console. It is common for pimps to carry condoms, which they provide to their prostitutes. Pimps will typically have more than one cell phone.
[3] We note, however, that the strong weight of authority is contrary to Wagner. (See People v. Bradshaw, supra, 31 Cal.App.3d at p. 426 ["subdivision (b) . . . covers also cases where a defendant has solicited one whom he believes to be a former prostitute to re-enter the profession and a defendant who solicits one whom he believes presently to be a prostitute to change her business relations"]; People v. Patton (1976) 63 Cal.App.3d 211, 216-218 [133 Cal.Rptr. 533]; People v. Hashimoto, supra, 54 Cal.App.3d at p. 867.)
[4] To the extent prior opinions such as People v. Mitchell (1949) 91 Cal.App.2d 214, 217-218 [205 P.2d 101] imply that the crime of pandering remains inchoate unless "the evidence shows that the accused has succeeded in inducing his victim to become an inmate of a house of prostitution," we follow the Bradshaw and Hashimoto line of cases as properly effectuating the plain meaning of section 266i, subdivision (b).