Filed 4/21/15  P. v. Robinson CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048941 |
| v. | (Super. Ct. No. 13WF0628) |
| CIERRA MELISSA ROBINSON, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, M. Marc Kelly, Judge.  Affirmed.

Steven J. Carroll, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Cierra Melissa Robinson was convicted of one count each of pandering for prostitution and human trafficking. (Pen. Code, §§ 266i, subd. (a)(1), 236.1, subd. (c)(1).)[1] Her primary argument on appeal is that the trial court lacked jurisdiction over her crimes because they occurred exclusively in Arizona. She also contends the court committed instructional error, and reversal is required under the lesser included offense doctrine. We reject these contentions and affirm the judgment.

FACTS

At the tender age of 14, Jane Doe ran away from her Arizona home and started working as a stripper at a club in Scottsdale called "Skins." Appellant worked in the area around the club as a prostitute. One day she approached Doe and told her she could make more money working as a prostitute than a stripper. Doe told appellant she was not interested.

A couple of nights later, on February 22, 2013, appellant and her pimp Chuncey Garcia contacted Doe as she was leaving Skins. After speaking briefly with Garcia, Doe accompanied him and appellant to a nearby motel room. Doe thought Garcia was going to offer her a job answering phones, but that wasn't the case. Instead, he told her he wanted her to become one of his prostitutes. He explained how she should handle customers and what to charge them. He also told her she was not allowed to tell anyone she worked for him. Although Doe did not want to become a prostitute, she went along with what Garcia was saying and joined his operation because she feared him.

That night, appellant, who was known as Garcia's "head bitch," acquired a cell phone for Doe and posted her phone number on the internet. The next day, Doe began receiving calls from men who were looking for sex. However, she did not accept any of their propositions. When Garcia asked about the calls, Doe lied and told him they were from other pimps, not potential customers.

---

[1] All further statutory references are to the Penal Code.

2

A day or two later, Garcia, appellant, Doe, and a woman named "Baby" left Scottsdale and drove to California in Garcia's Cadillac. Along the way, they stopped at a truck stop and a McDonald's restaurant. Garcia made appellant and Baby turn tricks during the stops, but Doe did not engage in any prostitution during the trip.

That changed when the group arrived in Orange County. Working out of an Anaheim motel, Garcia required Doe and the others to each bring in at least $200 a day from prostitution activity. Appellant gave Doe tips on how to meet that quota. At Garcia's direction, appellant also bought clothes for Doe and posted sexually explicit pictures of her on the internet in order to get her clients. However, the operation did not last long. On March 1, 2013 – just one week after Doe first met Garcia in Scottsdale – the police arrested Garcia and appellant following a traffic stop. During the stop, Doe initially lied to the officers about her name and age, but she eventually came clean about everything.

Appellant and Garcia were tried separately. Although Doe was unavailable for appellant's trial, a videotape of her sworn conditional examination was played for the jury. After appellant was convicted of pandering and human trafficking, the court sentenced her to the low term of five years in prison for the latter offense and stayed sentence on the pandering count pursuant to section 654.

## I

Appellant argues California lacked jurisdiction over her crimes, but we disagree. Although the offenses were completed in Arizona for purposes of establishing appellant's culpability, they continued after Doe was transported to California. Therefore, jurisdiction in this state was proper.

Appellant was charged with two distinct, but interrelated crimes, pandering and human trafficking. The pandering charge alleged appellant procured Doe for the

3

purpose of prostitution in violation of section 266i, subdivision (a)(1).[2] The trafficking charge alleged appellant induced Doe, a minor, to engage in prostitution with the intent to effect or maintain a violation of section 266i. (§ 236.1, subd. (c).)[3]

At the end of the prosecution's case-in-chief, appellant moved to dismiss both counts for lack of jurisdiction on the basis the evidence failed to establish that any of the underlying acts occurred in California. The motion was premised on the belief the charged offenses were completed in Arizona once Doe agreed to become a prostitute, and although appellant assisted Doe's prostitution activities in California, the pandering and trafficking offenses were not ongoing crimes. Therefore, California did not have jurisdiction to try her for those offenses. The trial court disagreed. It believed there was evidence of ongoing procurement in California and that appellant endeavored to support and maintain Doe's prostitution activity in this state. It denied appellant's motion to dismiss.

"It long has been established that a state will entertain a criminal proceeding only to enforce its own criminal laws, and will not assume authority to enforce the penal laws of other states or the federal government through criminal

---

[2] Section 266i, subdivision (a) states pandering occurs when a person does any of the following:
"(1) Procures another person for the purpose of prostitution.
"(2) By promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute.
"(3) Procures for another person a place as an inmate in a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state.
"(4) By promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages an inmate of a house of prostitution, or any other place in which prostitution is encouraged or allowed, to remain therein as an inmate.
"(5) By fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, procures another person for the purpose of prostitution, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution.
"(6) Receives or gives, or agrees to receive or give, any money or thing of value for procuring, or attempting to procure, another person for the purpose of prostitution, or to come into this state or leave this state for the purpose of prostitution."

[3] Despite its name, the "trafficking" charge did not require appellant to transport Doe from one place to another; it simply required inducement with the intent to effect or maintain prostitution activity. (§ 236.1, subd. (c).)

4

prosecutions in its state courts. [Citation.]" (*People v. Betts* (2005) 34 Cal.4th 1039, 1046.) However, the narrow common law rule which limited jurisdiction to a single state no longer governs jurisdictional issues in California. (*Ibid.*) In recognition of the fact criminal activity often spans more than one state, California has enacted various statutes which are designed to extend jurisdiction over those whose conduct affects persons in or interests of this state, provided it is just and reasonable to do so. (*Id.* at p. 1047; *People v. Renteria* (2008) 165 Cal.App.4th 1108, 1118.)

In particular, section 27 authorizes California to assume jurisdiction over any defendant whose crime was committed "in whole or in part" in this state. (§ 27, subd. (a)(1).) And, section 778 gives California jurisdiction over any defendant whose crime was "commenced" outside the state, so long as it was "consummated" in California by means proceeding directly from the defendant. (§ 778.) As we now explain, appellant's crimes fell within the terms of both of these statutes.

Looking at section 778 first, it is clear the crimes of pandering for prostitution and human trafficking were commenced in Arizona when appellant and Garcia induced Doe to become a prostitute. However, while the acts necessary to trigger liability occurred in Arizona, the objective of appellant's crimes was not fulfilled until Doe actually started working as a prostitute, which was in California. Appellant fails to recognize this distinction. In focusing on the acts necessary to trigger liability, appellant overlooks the fact section 778 is not so much concerned with where the underlying acts of the crime took place as where the *result* of those acts occurred. (*Hageseth v. Superior Court* (2007) 150 Cal.App.4th 1399, 1418.) Because the result of appellant's pandering and trafficking activity, i.e., Doe's prostitution, occurred in this state, the crimes were consummated here for purposes of section 778, and jurisdiction was proper under that statute. (See generally *People v. Zambia* (2011) 51 Cal.4th 965, 970-971 [while the language of the pandering statute focuses on inducing and encouraging, the ultimate purpose of the statute is to deter prostitution activity].)

5

Our analysis under section 27 follows a similar track. As noted above, that statute is satisfied if the subject offense was committed in whole or in part in California. It is true that pandering has been described as a "one-act offense," given it is technically accomplished when the defendant procures a person for the purpose of prostitution. (*People v. White* (1979) 89 Cal.App.3d 143, 151 (*White*).) That description would also fit the crime of human trafficking under section 236.1, subdivision (c), since it focuses on the act of inducing a minor to engage in prostitution. But while the acts of procuring and inducing are sufficient to *trigger* liability, it does not mean these crimes are *over* when those acts initially occur. Rather, courts have treated these crimes as continuous, ongoing offenses in a variety of contexts.

For example, in *White, supra,* the court determined that for jury unanimity purposes, the prosecution was not required to elect among the many acts of prostitution the victim of the defendant's pandering carried out after he recruited her. After noting the pandering statute is designed to discourage people from increasing the supply of available prostitutes, the court stated "once the female is procured for a house of prostitution, the one offense becomes ongoing as long as the female plies her trade in such house." (*White, supra,* 89 Cal.App.3d at p. 151.)[4]

Similarly, in *People v. Leonard* (2014) 228 Cal.App.4th 465, 488-491 (*Leonard*), the court determined pandering is an ongoing offense for purposes of determining the scope of aiding and abetting liability. Even though the defendant did not assist his codefendant in carrying out any of the initial acts that led the victim to become a prostitute, he was liable for pandering because he helped his codefendant ensure the victim continued in that line of work. (*Ibid.*) Following *White*, the *Leonard* court ruled that despite the fact the crime of pandering is complete once the victim is encouraged to

---

[4]    In *White*, the defendant was charged with procuring for another person a place as an inmate in a house of prostitution under former section 266i, subdivision (c). That offense is currently set forth in section 266i, subdivision (a)(3).

become a prostitute, "it continues as long as the intended prostitution continues." (*Leonard, supra,* 228 Cal.App.4th at p. 490.)

Appellant attempts to distinguish *Leonard* on the basis the initial pandering in that case occurred in California, not out of state. In other words, she feels *Leonard* is inapt because it did not address the issue of jurisdiction for interstate offenses. However, at its core, *Leonard* addressed the same basic question at issue in this case: Under what circumstances is it fair and reasonable for California to extend criminal liability to people who get others to work in the prostitution trade? If a person who is not involved in the initial pandering can be held liable for persuading the victim to remain in the trade, as in *Leonard*, it makes imminent sense to extend jurisdiction over appellant because she not only facilitated Doe's prostitution activity and encouraged her to remain in the trade, she was actively involved in Doe's initial recruitment. In fact, she is the one who lured Doe into Garcia's clutches and laid the groundwork for Doe's transformation from stripper to prostitute.

*People v. Osuna* (1967) 251 Cal.App.2d 528, on which appellant relies, does not compel a different result. In that case, the court held the crime of procuring a female to work in a place of prostitution is complete once the defendant induces the victim to work in such a place, irrespective of whether she actually does so. (*Id*. at pp. 531-532.) However, in so holding, *Osuna* was simply concerned with the threshold question of whether the defendant's conduct was sufficient to trigger liability for pandering in the first place. The court had no reason to consider the issue before us, which is whether, once technically started, pandering is a continuing offense for purposes of establishing the scope of a person's liability for that offense.

As explained above, these are two different issues. While appellant's crimes were technically accomplished in Arizona, they continued in California because that is where Doe actually started working as a prostitute and that is where, with appellant's assistance, the labor of appellant's crimes began to bear fruit. At bottom, we

7

are satisfied California's interest in curbing the sexual exploitation of minors and curtailing prostitution activity as a whole gives it jurisdiction to prosecute appellant for her role in procuring Doe to work as a prostitute in this state. There is no basis for disturbing the trial court's ruling in that regard.

## II

Appellant also contends the trial court wrongfully denied her request to instruct the jury that, in order to convict her of the charged offenses, it must find she committed the alleged acts in California. However, it is well established the question of jurisdiction – which is unrelated to the defendant's guilt or innocence – is a legal issue for the court, not a factual question for the jury. (*People v. Betts*, *supra*, 34 Cal.4th at p. 1054.) Therefore, appellant had no right to have the issue of jurisdiction decided by her jury. (*Ibid.*; *Hageseth v. Superior Court, supra*, 150 Cal.App.4th at p. 1408.)

## III

Lastly, appellant argues her conviction for human trafficking must be reversed because that offense is a necessarily included offense of pandering. Again, we disagree.

A defendant may not be convicted of multiple charged offenses if one is necessarily included in the other. (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.) "[I]f the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former" and must be reversed. (*Ibid.*)

Appellant was convicted of pandering for procuring "another person for the purpose of prostitution" (§ 266i, subd. (a)), and she was convicted of human trafficking for inducing a minor to engage in prostitution with the intent to effect or maintain a violation of the pandering statute (§ 236.1, subd. (c).) As appellant admits, a pandering victim can be any age, so if she had procured an adult for prostitution, she would have

8

been guilty of pandering but not trafficking a minor.  Therefore, the latter offense is not necessarily included in the former.

Nevertheless, appellant argues her trafficking offense was a necessarily included offense of pandering in this case because of the manner in which the latter offense was charged.  In particular, she relies on the fact the prosecution not only charged her with pandering in violation of section 266i, subdivision (a)(1), it also alleged she pandered to a person who was under the age of sixteen.  However, this charging language only affected appellant's potential punishment, it did not change the elements of her underlying crimes.[5]  Because the age of appellant's victim was only a sentencing factor, it is not relevant for purposes of applying the necessarily included offense test.  (*People v. Izaguirre* (2007) 42 Cal.4th 126, 128; *People v. Wolcott* (1983) 34 Cal.3d 92, 100-101.)

More fundamentally, our Supreme Court has made it clear that when determining whether multiple convictions for charged offenses is proper, we must consider only the statutory elements of the subject offenses and not the facts alleged in the accusatory pleading.  (*People v. Reed, supra*, 38 Cal.4th at p. 1231; *People v. Ramirez* (2009) 45 Cal.4th 980, 984-985.)  As we have explained, trafficking a minor is not a necessarily included offense of pandering under the statutory elements test, and thus appellant was properly convicted of both offenses.[6]

---

[5]        Whereas the punishment for violating section 266i, subdivision (a)(1) is three, four or six years in prison, the punishment for violating that provision when the victim is under sixteen years of age is three, six or eight years in prison.  (§ 266i, subd. (b)(2).)

[6]        In light of this conclusion, we need not consider respondent's argument human trafficking could not be a *lesser* included offense in this case because it carried a *greater* punishment than the pandering offense. (Compare the punishment for pandering set forth in fn. 5 above with section 236.1, subd. (c)(1), which prescribes a punishment of five, eight or twelve years in prison for trafficking a minor.)  However, the argument would probably not have much traction even if we did.  (See *People v. Reed, supra*, 38 Cal.4th at p. 1230 [positing that murder could be a lesser included offense of robbery in certain circumstances].)

DISPOSITION

The judgment is affirmed.


BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.